# JANUARY TERM.

## CHARLESTON.

MOORE *v.* HARPER *et al.*

Submitted January 14, 1886.—Decided February 6, 1886.

1. A bill in equity, notwithstanding it contains many vague and irrelevant allegations, will not be held bad on demurrer, if taken as a whole it states facts which entitle the plaintiff to relief. (p. 367.)

2. Under the provisions of our statute—Code, ch. 79, sec. 1—a court of equity in a suit for the partition of lands. may take cognizance of all questions of law affecting the legal title that may arise in the proceeding, such as removing a cloud from the title or passing upon an adverse claim to the land. (p. 368.)

3. It is a well settled doctrine, that he who accepts a benefit under a will must adopt its whole contents, conforming to all its provisions and renouncing every right inconsistent with it; consequently, where a testator has affected to dispose of property not his own and has given to the owner of that property a benefit, such owner accepting the benefit can not claim the property thus disposed of in opposition to the will. (p. 371.)

4. A testator provides in his will that a certain person therein named shall decide all questions, which may arise among his devisees and legatees in relation to the construction of his will, and that the written opinion of such person shall be final, HELD:

> That the written opinion of such person, if made without fraud and corruption, will be treated by the courts as final and conclusive of the matters decided as between the devisees and legatees affected thereby. (p. 373.)

*R. S. Turk* for appellant.

*J. W. Arbuckle* and *H. S. Rucker* for appellee.

SNYDER, JUDGE:

Henry Harper of Pocahontas county made his last will dated February 25, 1856, by which he disposed of all his real

and personal property. He was then the owner of valuable improved lands for a considerable distance along the bottom or valley of Knapp's creek, and also of a large quantity of unimproved mountain land of little value adjoining his improved land and extending along the side of it and for some distance north and beyond his creek land. He devised all his creek or improved land to his sons by dividing it into sections by lines across the bottom. His son-in-law, A. W. Moore, was at that time the owner of a section of bottom land on said creek above the land of the testator, and Preston Moore and F. Dever owned sections between the lands of said Moore and the testator, Dever's land being next and adjoining the testator's on the north side. Of the said mountain land the testator devised to Peter and Rachel Ann, the children of his deceased son Henry, all that part lying along the border of their creek land, that is, " so much as may be included by and within straight lines run from the lower and upper ends of the place to the top of the little mountain—Alleghaney side." The will then proceeds as follows: " 7. And all above that devised to said Peter and Rachel Ann up to Dever's line I give and devise to my son Samuel."

" 8. And all of said lands above Dever's, being about 500 acres, I will and devise to my son-in-law, Washington Moore and his heirs."

In regard to this mountain land, he says in the twelfth clause of his will, that it contains some 20,000 acres, of which he owns three fifths, Lightner one fifth and Cleek one fifth; that in the partition it is understood he is to have his interest laid off in the rear of his creek lands, and that he has devised the same to his sons and son-in-law in rear of the creek lands devised to them respectively. In the next, the thirteenth clause, he says: " This leaves my Alleghaney mountain lands above the 'Moore's Sugar Camp Run' and my Meadow creek land undisposed of. Should I sell them, they will become personal assets and be embraced by the foregoing claims. If I fail to do so, then I direct my executors to sell the same, and after my daughters are equalized as aforesaid, I direct the proceeds, or the balance after making them equal, to be divided among all my said daughters."

By the fourteenth clause he appoints his son Samuel and

his son-in-law Washington Moore his executors; and the fifteenth and last clause is as follows:

" 15. And should any difficulty occur in the construction of this will or among the legatees or devisees herein enumerated in relation to it, it is my will that said question be submitted to William Skeen, whose written opinion shall be final between them, or if from death or removal said Skeen's opinion can not be had, I authorize the circuit judge to appoint three persons as arbitrators, whose opinion shall be final of any or all such questions, as I desire that no suits shall grow out of the distribution of the little property it has pleased God to intrust to my care and disposal."

Shortly after the date of the will and before the testator's death, the mountain land was partitioned and he conveyed two fifths thereof to Lightner and Cleek retaining his three fifths next to his creek lands, the legal title to the whole prior to said partition and conveyance being in the testator.

Some of the parties differing as to their rights under the will which had been admitted to probate in January, 1858, William Skeen, under the authority vested in him by the fifteenth clause, filed a written opinion, dated March 10, 1860, in which, among other matters not now in controversy, he says: " That by the testator's will he intended to and did dispose of all his Alleghaney mountain lands and under the will the executors therefore have no power to sell any except those lying above the ' Moore's Sugar Camp Run.' They are designated on the accompanying plat and contain 1,654 acres, divided in order to a sale into two lots of 821 and 833 acres." In this opinion Skeen waived any decision as to the division line between Samuel Harper and Washington Moore. In a subsequent written opinion dated October 25, 1875, he made the following decision in reference to said division line:

" By item 12 of testator's will, speaking of his Alleghany mountain lands, he says: 'I have devised the same to my sons in the rear of the creek lands devised to them, so also to my grandchildren in rear of that conveyed their father and to my son-in-law in rear of his own lands.' This ought to settle the matter in dispute. But he makes the matter still plainer: By item 8 of will he says: 'And all of said land above Dever's, being about 500 acres, I will and his

devise to my son-in-law Washington Moore and heirs,' &c. What did he mean by the phrase ' above Dever's ?' By item 7 he provides that, 'and all above that devised to said Peter and Rachel Ann up to Dever's line I give and devise to my son Samuel.' "

By the phrase 'above Dever's' testator meant above Dever's upper line, where Andrew W. Moore's lower line joins Dever's, and that all the lands in the rear ot Andrew W. Moore's creek land above Dever's should go to said Moore and his heirs.   Samuel Harper, therefore, under the will, takes all the Alleghany mountain lands from the upper line of the lands willed to Peter and Rachel Ann Harper to the upper line of Dever and Andrew W. Moore the lands above the Dever line not sold under my opinion of March 10, 1860, whether there be 500 or 5,000 acres, for all is devised him above the Dever line and in the rear of his own lands."

The executors sold the aforesaid 1,654 acres of land lying above "Moore's Sugar Camp Run."

On March 21, 1882, A. W. Moore, the same person who is designated as Washington Moore in the will aforesaid, brought this suit in the circuit court of Pocahontas county against the executors and all the devisees and legatees of Henry Harper, deceased.   The plaintiff's bill is rather confused and uncertain in its allegations, so much so that it is very difficult to determine from its allegations alone the real objects and purpose of the suit.   After stating the contents of the will and the names of the parties and their respective interests, the bill avers that the testator devised to the plaintiff the lands designated in the 8th clause of his will and further described in the 12th clause as the land "in rear of his own lands," that in regard to the plaintiff's right to these lands there should be no dispute, but owing to the grasping disposition of the defendant, Samuel Harper, who, having already secured to himself the lion's share of his father's estate, has "persuaded himself that his brother-in-law, the plaintiff, is entitled to little or nothing, and has therefore pretended to claim the lands formerly belonging to Henry Harper lying in rear of the lands of the plaintiff, which the plaintiff is advised belonged to himself, whether the boundary be 500 or 5,000 acres."

It further avers that the plaintiff has had a survey and map made of said lands, which he claims were devised to him, notwithstanding the claim of Samuel Harper to the contrary; that the plaintiff is "very anxious to have the amount of land which he takes under the said will fixed and determined, and that he has been greatly annoyed and vexed by the claims of said Samuel Harper, who, by his pretensions, is clouding the plaintiff's title to said land, and that he is advised it is in the province of this court to quiet his title."

The bill also avers, that in the event there is more land "above Dever's line" and back of the plaintiff's land than the plaintiff is entitled to, the excess does not belong to Samuel Harper, but to the heirs of the testator, or the legatees, who, under the will, were to have the proceeds of all lands not specifically devised.

The will and the two opinions of William Skeen construing it, also the survey and map therein referred to are made parts of the bill.

The prayer of the bill is as follows:

"Plaintiff therefore prays that the construction by Wm. Skeen of the will of Henry Harper, deceased, may be pronounced the legal and proper construction of said will and finally so far as complainant's rights are concerned; that complainant be quieted in his title to the land devised to him by Henry Harper, deceased; that if there remains any more land than that to which the complainant is entitled of the estate of Henry Harper, deceased, that the overplus be sold and the proceeds arising from said sale be properly distributed among the heirs entitled thereto, and further prays for such other further and general relief as may be consistent with equity and rules of this court. And he will ever pray, &c."

It would seem from the allegations and prayer of the bill, that the object of the suit was simply to have the plaintiff's title to the land, which he avers was devised to him by the will and confirmed to him by the opinion of Skeen, quieted against some pretended claim asserted by Samuel Harper under a different construction of the will. But the answer of Samuel Harper and other facts developed in the cause show that such is not the fact. The said Samuel, in his an-

swer, states the nature of his claim to the land in dispute as follows: That in 1841 Christopher Herold, Henry Harper, (the testator), Jacob Lightner, Adam Lightner and Charles Hamilton were the joint owners—each owning one-fifth—of a large tract of land, of which the land in controversy is a part; that respondent and his brothers, William and Henry, Jr., purchased the interest of Christopher Herold, and it was conveyed to them by him by deed dated April 3, 1841, and duly recorded in the county; that after said purchase some apprehension arose as to the title, and the parties to whom the land then belonged deputized the testator, Henry Harper, to act as their agent and obtain a new grant for the land, each bearing his proportion of the cost; that pursuant to said authority, said Henry Harper did, on August 2, 1854, obtain such grant, but instead of separate grants, or a joint grant to all the owners, he took the entire grant in his own name; that subsequently he conveyed to the other owners their respective interests, but never conveyed to respondent and his brothers their interests, but before, as well as after said conveyances to the other owners, respondent and his brothers had remained in possession of the land now claimed by the plaintiff, except the 500 acres devised to him by the will; that they have ever had the uninterrupted adverse possession of the same with their father's consent in his lifetime, and with the knowledge of the plaintiff since his death; that such possession has continued for a period of over twenty-five years, and during the whole of that time they have paid the taxes thereon.

It thus appears that the title or right asserted by Samuel Harper is not under but adverse to the will under which the plaintiff claims.

The defendant, Samuel Harper, demurred to the plaintiff's bill, which demurrer the court overruled. This action of the court is the first error assigned by the appellant, the said Samuel Harper.

It is contended that the bill, if it presents any cause of action, shows that it is an action of ejectment in disguise without any title to equitable relief; that the plaintiff has a complete remedy at law, and therefore this court has no jurisdiction.

While as betore stated, this bill is vague and quite imper-
fect in its allegations, still under the liberal construction and
interpretation allowed in equity pleadings and practice, I
think, it may be treated as a bill for partition between the
plaintiff and the defendants.  After indirectly averring or
admitting, that there is probably more land " above Dever's
line" than the plaintiff is entitled to, and that such excess, if
any, belongs to the heirs ot the testator or its proceeds to his
legatees, it prays that the plaintiff may be quieted in his title
and that the land, it any there be to which the plaintift is
not entitled may be sold and the proceeds distributed, &c.,
and for general relief.

Our statute provides, that the circuit court " shall have
jurisdiction in cases of partition, and in the exercise ot such
jurisdiction, may take cognizance of *all questions of law* af-
fecting *the legal title*, that may arise in the proceedings." Sec.
1, ch. 79, Code, p. 486.

This provision ot the Code has rendered obsolete the de-
cisions of the court of appeals of Virginia in 3 Rand. 370; 4
*Id.* 74; 4 Leigh 192; so that now courts of equity may de-
cide upon the title as an incident to its jurisdiction to make
partition.  *Currin* v. *Sprank,* 10 Gratt. 145.

Thus we see that the court had jurisdiction not only to de-
cree partition but by the express terms of the statute it had
also the right to pass upon all questions affecting the legal
title.  One of these questions was presented by the claim as-
serted by the appellant to the land to be partitioned.  It also
had jurisdiction to quiet the title ot the plaintiff against such
claim.  *Morris* v. *Coleman,* 1 Rob. 478; 1 Bart. Ch. Pr. 67.

I think, therefore, the plaintift's bill is sufficient and the
demurrer was rightly overruled.

Susan McCarty, one of the daughters of the testator to
whom the proceeds ot the lands not specifically devised is
given by the will, and her husband J. W. D. McCarty, also
answered the plaintift's bill.  They claim that all the land in
controversy except that given to the plaintiff in the eighth
clause of the will, say about 500 acres, was directed to be
sold and the proceeds paid over to the daughters ot the testa-
tor.  They deny that either the plaintiff or the defendant
Samuel Harper owns or has any rightful claim to any of the

land except the said 500 acres; and they pray that said 500 acres may be laid off and partitioned to the plaintiff, and the residue of said land, about 3,460 acres, may be sold and the proceeds divided among the daughters of the testator.

The court appointed commissioners with directions to assign to the plaintiff the land which he is entitled under the will of Henry Harper, deceased, taking into consideration the construction of the will given in the opinion of Gen. Skeen, and that they report what, if any, land remains of the estate not owned by the plaintiff.

The commissoners went upon the land and made a plat thereof from which it appears that the testator owned 4,600 acres of mountain land above Dever's upper line and between that line and "Moore's Sugar Creek Run," of which 993 acres was located in the rear of the creek lands owned by the plaintiff at the date of the will, 1,105 acres in rear of Preston Moore's Creek land between Dever's upper line and the said 993 acres, and 2,302 acres above the said 993 acres and between that and "Moore's Sugar Creek Run." This latter not including any part of the 1,654 acres lying beyond said run and which had been sold by the executors before the institution of this suit as before stated.

The commissioners filed this plat and their report in the cause. By their report they partitioned the said 4,600 acres, assigning to the plaintiff 2,098 being the 993 acres in rear of his creek lands and the 1,105 acres in rear of Preston Moore's creek lands, thus leaving the 2,302 acres between the land so assigned to the plaintiff and "Moore's Sugar Creek Run" as no part of the land devised to the plaintiff.

McCarty and wife excepted to this report on the ground tha tit improperly assigned to the plaintiff the said 1,105 acres in rear of Preston Moore's creek lands, and also because it gave to him 351 acres a part of the 993 which lies beyond or on the east side of the top of the Alleghany Mountain.

After the said plat and report had been returned Gen. Skeen filed on October 17, 1883, the following written explanation of his former opinion construing the will of the testator:

"The commissioners appointed by your Honor have shown me a map of the Harpers' land and of A. W. Moore's creek

lands. When I gave the opinion of October 25, 1875, I had no plat of the lands, and was under the impression theat A. W. Moore, at the date of the testator's will, was the owner of his brother Preston's lands, and that he owned, *at the date of the will,* all the lands '*above* Dever's upper line,' and of course my opinion gave him all in the rear of line O., P., E. and to A., as shown by commissioner's plat. It turns out to be a fact that A. W. Moore, at the date of testator's will, was not the owner of the Preston Moore lands, a fact not known to me at the time of giving the opinion aforesaid, and under a misapprehension of the facts and of the location as presented by the plat shown me by the commissioners, and I have this, therefore, to say, in justice to myself and to the devisees of Henry Harper, *all* of whose interests testator committed to my care and judgment, if I had known this fact, that my judgment would have been that A. W. Moore took under testator's will all the lands in rear of the line *red* E. to A., being all the 'creek lands' he owned at the date of the will, as shown by the plat."

This opinion was made a part of the exceptions taken by McCarty and wife to the commissioner's report.

The court by its decree of October 18, 1883, overruled the exceptions to the commissioner's report, "and the said A. W. Moore (the plaintiff) consenting thereto, it decreed that said report be and the same is hereby confirmed in all its parts." The decree then by metes and bounds assigned to the plaintiff the said 2,098 acres of land, and gave him costs against all the defendants.

Subsequently by decree of June 18, 1884, the court being of opinion, that the 2,302 acres of land described in the commissioner's report, according to the 13th clause of the will of Henry Harper, deceased, should be sold and the proceeds divided among the daughters of the testator as in said clause of the will directed, decreed said land to be sold at public auction by a commissioner appointed by it for that purpose. This appeal was taken before this decree was executed.

In my view of this cause it is unnecessary to consider or decide whether the appellant, Samuel Harper, had or had not a good equitable title or right to any of the land, in contro-

versy at the date of his father's will.   It does not appear
that his alleged joint owners, William or Henry, or their
representatives, set up any claim to this land, and the record
abundantly shows that the appellant as the devisee of his
father took and accepted a large estate, much more valuable
than the interest he claims in this land.   It is a well settled
doctrine, that he who accepts a benefit under a will must
adopt its whole contents, conforming to all its provisions,
and renouncing every right inconsistent with it.   Therefore
where a testator has affected to dispose of property not his
own, and has given a benefit to the owner of that property,
such owner accepting the benefit so given to him must make
good the testator's attempted disposition.   1 Jarman on
Wills, 384, (Marg.)   And it is immaterial whether the tes-
.tator, in disposing of that which is not his own, is aware of
his want of title, or proceeds upon the erroneous supposition
that he is exercising a power of disposition which belongs to
him ; in either case, whoever claims in opposition to the will
must relinquish what the will gives him.   *Id.* 387; *Gregory* v.
*Gates*, 30 Gratt. 83, 89 ; *Upshaw* v. *Upshaw*, 2 H. & M. 381.

It is also well settled, that, in order to raise a case of elec-
tion, there must appear in the will itself a clear intention on
the part of the testator to dispose of that which is not his
own.   That is, it must plainly appear from the will that the
testator intended to dispose of the particular estate or prop-
erty in question.   If this intention is clear it is immaterial
whether he knew or claimed it was his own or not.   But if
the will shows that he claimed to own the property and it is
disposed of along with other property of his own, this will
be sufficient evidence of an intention to dispose of it.   *Noys*
v. *Mordaunt*, 1 Lead. Cas. Eq. 284 (Marg.) and cases cited.

In the case before us the testator, in the 12th clause of
his will says, that he owns three-fifths of this land and the
other two-fifths are owned by Lightner and Cleek.   Then he
proceeds in this and other clauses of his will to dispose spe-
cifically of the whole of his three-fifths of this land.   He
recognizes the interests of Lightner and Cleek but makes no
exception or mention of the claim of the appellant.   It is
therefore plain to me, that the testator intended to dispose of
the whole of the three-fifths of this land, and that the appellant

by electing to take other property and benefits under the will of his father relinquished all right, if any he had, to claim any part or interest in this land against the disposition made of it by the will.

It seems to be further contended by appellant, that he has in some manner, not very definitely disclosed, obtained title to this land by adverse possession since the death of his father. This pretension is entirely without merit. His proof fails to show such actual possession as would convert his claim into a title. The improvements which he claims to have made upon the land are proven to have been made not over seven years before the institution of this suit, a period too short to create an adverse title. But, aside from this, he was one of the executors of the will, with authority to sell this land, and claiming only an undivided interest, his possession, whatever might have been its character or duration, could not be, under the circumstances, regarded as adverse to those claiming under the will of his father. It would be singular if an executor empowered to sell land, by taking possession of it, and refusing to sell, could acquire title by such possession and thus destroy the rights of his beneficiaries. *Cooey* v. *Porter*, 22 W. Va. 120.

This disposes of all the interest of the appellant, Samuel Harper, in this appeal, and as to him I find no error in the decrees of the circuit court.

The plaintiff, A. W. Moore, in the brief of counsel for him filed in this Court, complains that the circuit court erred in not giving him the whole of the 4,400 acres instead of the 2,098 which it did decree to him, and he asks this Court to correct said error. It is only necessary, as a conclusive reply to this complaint, to refer to the decree of October 18, 1883, hereinbefore referred to, wherein it appears the said Moore consented to the confirmation of the commissioners' report, which fixed his claim at 2,098, the amount decreed to him by the court. This consent by him alone, while not binding upon the other parties, operated as an agreement on his part, that he was satisfied with the action of the court, and would make no further claim. He is clearly bound by this consent, and his complaint here must be disregarded.

The appellees, McCarty and wife, have assigned as error,

that the circuit court erred in its decree of October 18, 1883, in overruling their exceptions to, and confirming the report partitioning the land, that, under the testator's will, the plaintiff was entitled to only 642 acres and not 2,098. The plat or map filed in the cause shows that of the 993 acres of land in the rear of the plaintiff's creek land, 642 acres lie west and 351 acres lie east of the top of the Alleghany mountains. McCarty and wife contend that the 642 acres on the west side are all that the will gives to the plaintiff.

Having already held that this must be treated as in effect a suit for the partition of the testator's mountain land under his last will, it necessarily follows that McCarty and wife, who claim and are entitled, under the will, to a part of the proceeds of so much of the land in dispute as does not belong to the plaintiff, have the right to contest the pretensions of the plaintiff, and if the circuit court has erroneously decreed to him more land than he is entitled to under a proper construction of the will, they have the legal right to call upon this Court to correct such error.

Thus treating McCarty and wife as cross-appellants, the first question presented is, what effect is to be given to the decision of General Skeen construing the will of Henry Harper.

We have seen that by the 15th clause of the will the testator has declared, that should any difficulty occur in the construction of his will among his devisees and legatees, it is his will that the same shall be submitted to Skeen, whose written opinion shall be final between them.

The power of the testator to provide in his will the mode and manner of its interpretation and the force and effect of such interpretation, does not seem to have been questioned in this suit—it has certainly not been controverted by the proceedings or argued in this Court. No authorities have been referred to, nor have I deemed it necessary to look for precedents, as the question seems to me to be so entirely analogous to contracts and other writings in which provision is made for their interpretation. In such cases, the right to prescribe the mode of interpretation and the effect to be given to it has, I believe, never been questioned. The effect of such a provision is to make the person appointed to interpret the

writing, or settle controversies growing out of it, an arbitrator chosen by the parties, and his determination may be made final or otherwise as the parties shall provide in the writing. I can see no reason why the same rule should not apply to a will. Of course a will is not an agreement between two or more contracting parties, but it is certainly no less binding upon the parties who take a benefit under it than if they had contracted with the testator for that benefit. The testator has full dominion over his property with the absolute right, subject only to the limitations fixed by law, to do with and dispose of it in any manner or to whomever his will or caprice may suggest. Within the rules of law he may subject it to any limitation, restriction or condition he chooses, and the devisee or legatee, if he elects to take under the will, will be bound to respect and observe the same. It, therefore, seems to me entirely clear that a testator has the power not only to appoint a person or arbitrator to interpret and settle difficulties among the devisees and legatees growing out of the dispositions made by the will, but that he has the right to make the decision of such arbiter, if made without fraud or corruption, final and conclusive upon the beneficiaries under the will.

Referring to the written opinion of Gen. Skeen of October 25, 1875, it will be found that his interpretation of the will gives to the plaintiff all the land devised to him in this suit. It awards to him not only the 2,098 acres allowed him by the circuit court but the language used is sufficiently broad to give him also the 2,302 acres which by his consent was not given to him by the decree of the circuit court.

It is true Skeen subsequently, and after this suit was ready for hearing, made a written statement explaining that if he had been cognizant of the whole situation his "judgment would have been that A. W. Moore took under the testator's will all the lands in the rear of the *red* E. to A., being all the creek lands he owned at the date of the will as shown by the plat." The land here referred to "in the rear of the red lines E. to A.," is the 993 acres above described and excludes from the plaintiff the 1,105 acres above Dever's upper line and in the rear of Preston Moore's creek lands which were subsequently purchased by the plaintiff. It does not appear that

Skeen by this statement intended to modify or change his former opinion construing the will, but on the contrary it seems that he did not intend or attempt to do so; for in the conclusion of his statement he says: " Of course it matters not what my opinion would have been if I had known all the facts, for the question is for you, and I take it for granted that Your Honor will excuse me for this addition to my opinion aforesaid, as I simply desire to place myself correctly upon the record in consequence of the power given under testator's will, knowing my opinion will have no influence in the opinion you are to form in the construction of the will."

I think therefore this statement can not be regarded as a modification of the former decision of Skeen even if he had the power to make such modification, which I doubt. The necessary conclusion then is, that the written opinion of Skeen of October 25, 1875, giving the whole of the 2,098 acres to the plaintiff must in the language of the will be treated as "final," and the decree of October 18, 1883, being in conformity with that opinion in regard to said 2,098 acres, is not erroneous.

No party interested in the decree of June 18, 1884, has made any objection thereto, and as I have discovered no error therein it must be regarded as a proper decree.

Upon the whole, therefore, I am of opinion that the aforesaid decrees of the circuit court must be affirmed and the appellant, Samuel Harper, pay to the appellees, A. W. Moore and McCarty and wife, their costs in this Court and $30.00 damages.

AFFIRMED.