## GILLESPIE v. POCAHONTAS COAL & COKE CO.

### (Circuit Court, S. D. West Virginia. October 15, 1907.)

**1. REMOVAL OF CAUSES—FEDERAL COURT—JURISDICTION—NONRESIDENCE OF PARTIES.**

Where a suit is brought in a state court, and neither plaintiff nor defendant is a resident of that state, it is not removable to the Circuit Court of the United States solely on the ground of diversity of citizenship.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 60.]

**2. SAME—CLOUD ON TITLE.**

Jurisdictional Act March 3, 1875, c. 137, 18 Stat. 470, as amended by Act March 3, 1887, c. 373, 24 Stat. 552, and Act Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), confers jurisdiction on a federal Circuit Court of a suit to remove a cloud from the title to land lying within the district where the suit is brought, so, where neither of the parties to a suit for such relief were residents of the state in the courts of which the suit was brought, it was removable to the federal Circuit Court.

**3. SAME—PETITION FOR REMOVAL—RECORD.**

The record may be examined in aid of a petition for the removal of a cause to the federal courts, where such averments do not disclose sufficient ground for jurisdiction on removal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 167.]

**4. SAME.**

A petition to remove a cause to the federal Circuit Court should contain the essential averments to show jurisdiction on removal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, §§ 166, 167.]

**5. ACKNOWLEDGMENT—MODE—MARRIED WOMEN.**

A certificate of acknowledgment to a deed, reciting that W., wife of the grantor, being examined by the officer privily and apart from her husband, and having the writing fully explained to her, declared she had willingly executed the same and did not wish to retract it, in accordance with the decisions of the Supreme Court of Appeals of West Virginia, where the instrument was executed, was insufficient to show that such feme covert acknowledged the deed to be her act.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Acknowledgment, §§ 183, 203–207.]

**6. PARTITION—NATURE OF PROCEEDING—TRIAL OF TITLE.**

The common-law rule that a trial of title could not be had in a suit for partition was changed by Code W. Va. 1899, c. 79, § 1 (Code 1906, § 3180), declaring that the court in such cases shall have jurisdiction of the questions of law affecting the legal title that may arise in the proceedings under which the court may pass on all claims of title except a title asserted by a stranger.

**7. JUDGMENT—CONCLUSIVENESS—ISSUES DETERMINED—PRESUMPTION.**

Where a court had jurisdiction to determine all conflicting questions of title between the parties to a partition suit, it would be presumed that it did so, and that the decree unappealed from finally adjudicated the interests of the parties in the land in controversy.

**8. INFANTS—ACTION—CONCLUSIVENESS OF DECREE.**

Where certain infants were parties to a suit for partition, a decree adjudicating their interests became conclusive on them, their privies, and alienees on the expiration of six months after they became of age with-

out their having within that time directly attacked the decree either by appeal or bill of review for error apparent on the face of the record.

9. PARTITION—FORM OF DECREE.

Where, in partition, the same title was decreed to certain distributees as was decreed to all the other co-tenants, and was such as M., who owned the fee, was seised of in his lifetime, the decree passed a fee to them, though it did not so state in terms.

10. SAME—CONSTRUCTION.

A partition decree recited that there were eight heirs to inherit the estate, and then purported to lay off and assign to each of them their respective interests, and to defendant's grantors, who held under a deed which was invalid as to the heir but valid as to her husband, was awarded an equal one-eighth part. *Held,* that such decree could not to be construed as intending to vest in defendant's grantor only the curtesy interest of the husband, but a title to a one-eighth interest in fee.

In Equity.

Chapman & Gillespie, for plaintiff.

Rucker, Anderson, Strother & Hughes and A. W. Reynolds, for defendant.

KELLER, District Judge. This is a suit in equity brought in the circuit court of McDowell county, W. Va., by J. S. Gillespie, a citizen and resident of the state of Virginia, against the Pocahontas Coal & Coke Company, a corporation organized and doing business under the laws of the state of New Jersey, and a citizen and resident of said state of New Jersey, for the purpose of setting aside and vacating, as clouds upon the title of plaintiff, certain deeds purporting to convey title to the defendant to certain lands in McDowell county, W. Va. The defendant in due time presented in the clerk's office of the circuit court of McDowell county, W. Va., its petition praying for the removal of this cause into the Circuit Court of the United States for the Southern District of West Virginia, accompanied by a bond in proper form; but it does not appear that any order was ever made by the state court either granting or refusing the prayer of the petition. At the next term of the Circuit Court of the United States for the Southern District of West Virginia, a copy of the record of this suit in the state circuit court was duly filed, and thereupon the plaintiff moved the court to remand the cause to the circuit court of McDowell county, W. Va. The judge then sitting (the writer being absent from his district) overruled this motion on the ground that no reason was suggested therefor.

It is true that the petition, standing alone, does not show any ground for the jurisdiction of the court upon removal, as it assigns no other ground than mere diversity of citizenship, and as the plaintiff is a citizen and resident of Virginia, and the defendant of New Jersey, this court, upon that ground alone, would have no jurisdiction to hear the cause. Foulk v. Gray et al. (C. C.) 120 Fed. 156; In re Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264. However, upon inspection of the record accompanying the petition, it is at once seen that diversity of citizenship is not the sole ground of jurisdiction, as the suit is to remove a cloud from the title to land lying within the Southern district of West Virginia, and is therefore cognizable under

section 8 of the Jurisdictional Act of March 3, 1875 (chapter 137, 18 Stat. 472) as amended by the acts of 1887 and 1888 (Act March 3, 1887, c. 373, 24 Stat. 552, and Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 513]), and hence the suit was a removable one, and the motion to remand was properly overruled. See Dick v. Foraker, 155 U. S. 404, 15 Sup. Ct. 124, 39 L. Ed. 201; Greeley v. Lowe, 155 U. S. 58, 15 Sup. Ct. 24, 39 L. Ed. 69.

It has long been held that the record may be looked to in aid of the averments of the petition, where these do not fully disclose sufficient grounds for the jurisdiction upon removal. See Ruckman v. Ruckman (C. C.) 1 Fed. 587; Supreme Lodge Knights of Pythias of the World v. Wilson, 66 Fed. 785, 14 C. C. A. 264. However, while it is true that the whole record may be looked to to ascertain whether jurisdiction exists, good pleading requires that all essential averments be included in the petition, and since the decision in Re Wisner, supra, has definitely settled that merely personal causes of action between citizens of different states will not give jurisdiction save in the district of the residence of either the plaintiff or the defendant, it is extremely important that, where removal is sought in a neutral jurisdiction, the grounds for such jurisdiction should be plainly set forth in the petition itself, by showing the subject-matter of the suit.

Coming now to the merits of the case, I desire to say first that the case has been ably presented by the eminent counsel on both sides, and I regret that the limited time at my disposal has prevented me from fully discussing all the matters presented; but, as I have come to the conclusion that this case is governed by one controlling proposition, I trust to be excused from discussing other interesting features which are more incidentally presented.

Briefly, the facts are as follows: One J. T. Myers owned a large tract of land in McDowell county, W. Va., which, upon his death, intestate, passed by descent to his eight children, one of whom was Mary L. B. Myers, who had, prior to the death of her father, intermarried with Thomas C. White. By deed dated December 9, 1887, White and his wife conveyed, or attempted to convey, to Harman Newberry, J. G. Watts, and William E. Peery, "their entire interest in the lands of Mary L. B. White's father (J. T. Myers), lying on the Dry Fork of Sandy river, in McDowell county, W. Va., said interest is one-eighth of said lands owned by the said J. T. Myers, deceased, the said parties of the first part warrant generally the title to the land hereby conveyed." That portion of the certificate of acknowledgment to the deed relating to the privy examination of the wife, etc., is as follows:

"And the said Mary L. B. White, wife of said Thomas C. White, being examined by me privily and apart from her said husband, and having the said writing fully explained to her, declared she had willingly executed the same and does not wish to retract it."

Mary L. B. White died in 1888, leaving, surviving her, Thomas C. White, her husband, and four children, two of whom died in infancy, after the death of their father, which occurred in 1891, and the other two, Mary White and Sterling White, are both living; the for-

mer having attained her majority in February, 1903, and the latter in August, 1905. In November, 1894, Jessie Beavers, who was also a daughter of J. T. Myers, and Henry Beavers, her husband, instituted a suit in the circuit court of McDowell county, W. Va., for the partition of the lands of which J. T. Myers died seised, alleging, inter alia, the deed from Thomas White and Mary L. B. White to Newberry, Watts, and Peery, and exhibiting a copy thereof, and also alleging the death of Mary L. B. White, leaving her husband and two infant children, Mary and Sterling, surviving her. To this bill, Newberry, Watts, and Peery, Thomas White, and Mary and Sterling White, infants, were made parties; the first three being proceeded against by order of publication. A guardian ad litem was appointed for Mary and Sterling White, and filed an answer on their behalf. In the final decree it is recited that Thomas White was proceeded against by order of publication, but this is not borne out by the record, and there is independent proof in the record of this case that Thomas White was dead, and had been dead since 1891. It may be well to point out that if this partition record could, by any possibility, be taken as proving that Thomas White was alive in 1894, it would also prove that he became and was the heir of his other two infant children who had survived their mother and meantime died. But neither the making of Thomas White a party to this bill, nor the patently erroneous recital in the decree that he had been proceeded against by publication, could have any effect to declare or prove that he was alive at the bringing of this suit, and the plaintiff has proved in this record that he had been dead for three years when the suit was brought.

The land was partitioned in this suit, and 58.8 acres, being one-eighth of all the lands partitioned, were laid off and assigned to Newberry, Watts, and Peery, and the decree was ordered to be recorded in the county clerk's office in accordance with the statutes of West Virginia. Subsequently, Watts and Peery conveyed their interest in this 58.8 acres to Newberry, and Newberry conveyed to the defendant, who in 1904 took possession of the lands by a tenant, who remained thereon until about June 22, 1906, when he suddenly left, and on the same day the plaintiff had a tenant take possession on his behalf. The circumstances indicate collusion between these tenants, though there is no direct proof of it. The plaintiff, at the time of bringing this suit, was the owner of whatever interest Mary and Sterling White had in these lands, and seeks to set aside the conveyances under which defendant claims title, as clouds upon his title.

The contentions of the defendant against the granting of the relief prayed for in the bill are two, namely: First, that the deed from Thomas C. White and Mary L. B. White to Newberry, Watts, and Peery was a good and valid deed, and availed to pass the title of Mrs. White to her interest in her father's estate; and, second, that, in any event, the decree in partition of the circuit court of McDowell county, assigning this 58.8 acres to the grantors of defendant, created title, and, that decree not having been appealed from or otherwise

directly impeached within the time required by law, it cannot now be attacked collaterally.

If the first contention of the defendant were sustained, it would immediately end this case, as, if the proposition thus contended for were sound, Mary White and Sterling White never acquired any interest in this property, and consequently could never have conveyed any interest therein. Personally, I have no doubt but that the decisions of the Supreme Court of Appeals of West Virginia, construing the statute formerly prevailing governing the acknowledgments of married women to deeds purporting to convey their separate estate, were wrong in principle, and I much doubt whether the present court would sustain them. Similar decisions by the Supreme Court of Virginia have recently been overruled by the case of Geil v. Geil, 101 Va. 773, 45 S. E. 325, decided September 17, 1903, and, as stated by the court in that case:

"It is difficult to comprehend how a married woman can declare that she has willingly executed a deed and does not wish to retract it, without thereby, in substance and effect, acknowledging the deed to be her act."

Nevertheless, the present state of the law, as determined by the supreme appellate court of this state, is in favor of the proposition that the deed here in question does not avail to pass the title of the female grantor, and I feel constrained to abide by the law as so declared until that decision has been duly reversed.

However, the defendant also relies on the decree in partition entered by the circuit court of McDowell county, W. Va., to defeat this suit. Under the common law, as is well known, a suit in partition was merely a possessory proceeding, and was entirely inefficient to try title, and where the common law still remains in force, such is still the case. Many statutes have been passed in the different states modifying the common law, and in West Virginia the extent of the jurisdiction is now (and was at the time of the partition suit made part of the record herein) governed by the provisions of section 1, c. 79, of the Code of West Virginia of 1899 (Code 1906, § 3180), which section reads as follows:

"Tenants in common, joint tenants and coparceners, shall be compellable to make partition, and the circuit court of the county wherein the estate, or any part thereof, may be, shall have jurisdiction, in cases of partition, and in the exercise of such jurisdiction, may take cognizance of all questions of law affecting the legal title, that may arise in the proceedings."

Construing this statute, the Supreme Court of Appeals of West Virginia, in the case of Moore v. Harper, 27 W. Va. 362, decided that the court had authority to even pass upon an adverse claim to the land, but later have held, in the case of Davis v. Settle et al., 43 W. Va. 18, 26 S. E. 557, Syl., point 5:

"Section 1, c. 79, Code 1891, authorizes a court of equity in partition cases to pass on all questions of law touching the legal title of any one claiming to share in the partition to the interest he claims, if his interest be such as, if valid, will make him a co-owner in the common subject with the plaintiff, as holding under the same right or title under which the partition is to be made; but it does not authorize the court to pass on the title of a stranger claiming under a different title, adverse to the title under which the partition

is to be made, nor can such stranger and his hostile title be brought into such suit, and the conflict between the two hostile rights settled as incident to partition."

To the same effect is Carberry et al. v. W. Va. & P. R. Co., 44 W. Va. 260, 28 S. E. 694. For full notes upon the changes introduced by statutes as to the jurisdiction to try title in suits for partition, see Nicely v. Boyles, 4 Humph. (Tenn.) 177, 40 Am. Dec. 640, and Carter v. White, 134 N. C. 466, 46 S. E. 983, 101 Am. St. Rep. 853, in the latter of which the doctrine in West Virginia is stated and referred to. In the case last referred to, the editor sums up the effect of these statutory changes as follows:

"The general policy of the American statutes, especially those of a comparatively recent date, is to permit the parties in proceedings for partition to present and have determined every material question relating to the title, so that, as the result of the proceeding, each person having an allotment made to him, and each purchaser acquiring title under a decree of sale, may rest assured that he has acquired the title and interest of every person who has been before the court. All issues may be presented and determined which are necessary to the accomplishment of this result, and the determination, when made, is final and conclusive, and none of the parties can maintain any subsequent action or proceeding inconsistent with the determination thus made."

This language is just as pertinent, when applied to the recognized limits of jurisdiction in partition in West Virginia, as when applied to the wider jurisdiction obtaining in some of the other American states which permit adverse titles to be tried where the parties are before the court, and which doctrine was applied in Moore v. Harper, supra. In this case no question of a stranger title arose. All the parties before the court derived such title as they had from the same fountain, and the court had the right—and must be conclusively presumed to have exercised it—of deciding all questions of conflicting title arising between these parties.

The determination of the questions involved was just as final as regards the interest of the infant parties, Mary and Sterling White, as though they had been adults, save in one aspect. Had they been adults, and had neglected for six months to directly attack the decree either by appeal or by bill of review for error apparent on the face of the record, their rights would have been forever concluded. Being infants, they had their right to the choice of one of these remedies, at any time within six months after the time when they severally became 21 years of age—and, of course, their privies and alienees had the same right and for the same period—but, in my judgment, the moment that Mary White passed the age of 21 years and 6 months, without taking action to review and reverse the decree in the original partition suit, all remedy as to her interest, if such she had, was gone. And the same thing was true of the interest of Sterling White after he had passed the age of 21 years and 6 months.

Counsel for the plaintiff, aware, I suppose, of the final character of decrees in partition, unappealed from and unreviewed, and of the effect of the record thereof under section 8, c. 117, Code 1899 (Code 1906, § 3740), to pass title, have ingeniously sought to take the position that the court never decreed title to Newberry, Watts, and Peery,

and base it upon the fact that the language of the decree does not contain the words "in fee simple." It is enough to answer that the same title was decreed to them as was decreed to all of the other co-tenants, and was merely such title as J. T. Myers, in his lifetime, was seised of.

Counsel further suggest that, at the time of the partition decree, Thomas C. White was still in life, and that a decree to Newberry, Watts, and Peery was proper to convey to them his life interest. If that fact had been proved in the partition case, it could only have served to embarrass the plaintiff in his claim of ownership of this tract of land, as, had Thomas White been then in life, he would have been the heir of his other two deceased infant children, and, under his deed to Newberry et al., at least one-half of this tract would have been theirs, even had the court then and there pronounced said deed invalid to convey Mrs. White's title to the land. But the fact is that Thomas White died in 1891, three years before this suit was brought. It is true that Thomas White was named as a party to the suit, and that one of the decrees recites that process was served by order of publication on one "Thomas B. White"; but neither the affidavit of nonresidence nor the order of publication contains the name of Thomas White, though both are contained in the record, and, there being no suggestion of his nonresidence, he could not be legally served by order of publication, even if he were alive. But even had the affidavit of nonresidence and the order of publication as well as the decree contained his name, still the whole record would have been insufficient as proof that he was then alive, and hence the proof of his death in 1891 does not controvert that record. The record of the partition would have to contain affirmative proof that Thomas White was then in life to warrant any presumption that an estate by the curtesy was what the court decreed to Newberry, Watts, and Peery.

That it was the intent of the court to decree a one-eighth interest in this land to Newberry, Watts, and Peery is abundantly shown by the following extract from the decree of March 13, 1895, providing for the appointment of commissioners and the partition of the land:

"It is therefore adjudged, ordered, and decreed that: Jessie Beavers, an heir at law of Thos. J. Meyers, deceased, have her interest laid off and assigned to her of the said land mentioned in said bill, being eight heirs to inherit said estate, said Jessie Beavers is to have one-eighth part of said real estate mentioned in said bill. W. F. Harman one-eighth of said estate, to have laid off and assigned to him. Minnie Moore to have two-thirds of 'one-eighth part laid off and assigned to her. Wm. P. Payne to have one-third of one-eighth part laid off and assigned to him. Rosa Lambert to have one-eighth part laid off and assigned to her. Harman Newberry, John G. Watts, and Wm. E. Peery to have one-eighth laid off and assigned to them. Kewee Creek Flat Top Coal Company to have three-eighths of the real estate mentioned in said bill laid off and assigned to said company."

This language will not admit of any other construction than that the court is decreeing the partition of the Thos. J. Myers lands with such title as Thos. J. Myers had therein at the time of his decease.

Mary and Sterling White were made parties to the suit for the same reason that their mother, if alive, would have been made a party, that they might contest, if they desired, the instrument by which, it

was alleged, their mother's interest had been conveyed. For the same reasons Charles W. Myers, Clifton Myers, and Annie Myers, his wife, James L. Williams and Margaret, his wife, née Margaret Myers, and at the time of suit Margaret Hall, and Mary Myers, widow of J. T. Myers, who had united in a deed conveying a three-eighths undivided interest to the Kewee Creek Flat Top Coal Company, were made parties to the bill; but the land was assigned to their grantee without any reference whatever to them.

Again, a deed is exhibited with the bill in partition showing that Minnie J. Myers, before her marriage to J. W. Moore, had made a deed purporting to convey her interest to W. F. Harman. Again, after her marriage, she and her husband made a deed conveying one-third of her interest to W. P. Payne. All of the parties interested were before the court, and the decree assigns to Minnie J. Moore two-thirds of her interest and to W. P. Payne one-third of such interest, with no explanation whatever as to why the entire interest is not assigned to W. F. Harman in accordance with the provisions of her earlier deed.

There results a necessary implication that the court held the deed from Minnie J. Myers to W. F. Harman to be ineffectual to convey to said Harman her interest, and so in this case there results a necessary implication, from what the court did, that the deed from Thomas White and Mary L. B. White to Newberry, Watts, and Peery was held effectual to convey that interest, and that holding, if erroneous, could only have been corrected by an appeal or a bill of review sued out in season.

Counsel for plaintiff earnestly insist that the decree of the court, which they say they have no wish to attack collaterally, was entirely proper and consistent with the theory that Thomas C. White was still alive, and that the court was assigning his curtesy to Newberry, Watts, and Peery. I cannot agree that the decree would be correct with that as the object of the decree, as it would be the duty of the court (and so presumed to be done) to assign the remainder after the determination of the particular estate. As I have already pointed out, there are insuperable obstacles in the way of the theory that Thomas White was then alive, and that it was his curtesy that was assigned to Newberry, Watts, and Peery. If he was then alive, he was the owner of one-half of the remainder of the tract by the death of his other two children, and his interest so acquired would have passed to Newberry, Watts, and Peery under his general warranty deed.

In addition to this, if Thomas White did not die as and when he is proved to have died in his suit, he is not dead for the purposes of this suit, and the plaintiff now has no standing to bring this suit. There is no proof whatever that he died after the filing of the partition suit, and if, as contended, he is shown to have been then alive, he is still alive, and will be immortal.

In my judgment the decree in the partition suit can only be construed as vesting in Newberry, Watts, and Peery the title derived from J. T. Meyers, and, so construing it, there is no equity in the bill, and it will, accordingly, be dismissed.