# CHARLESTON

ALLEN v. SOUTH PENN COAL CO.

Submitted June 16, 1905.    Decided October 31, 1905.

1. SUIT IN CHANCERY—*Bill—Demurrer.*

   On demurrer to a bill all facts well pleaded are taken as true. (p. 211.)

2. SUIT IN CHANCERY—*Partnership—Demurrer.*

   Where parties are sued in chancery in their own right and as partners doing business in the firm name by which the partnership is known a demurrer filed in the name of the firm is the demurrer of all such defendants in their partnership capacity. (p. 211.)

3. SUIT IN CHANCERY—*Bill—Demurrer.*

   If a bill in equity shows right to any relief a general demurrer thereto must be overruled. (p. 211.)

Appeal from Circuit Court, Barbour County.

Bill by William H. Allen against J. N. Wilkinson and others, partners trading under the firm name of the South Penn Coal Company. Decree for defendants, and plaintiff appeals.

*Reversed.*

Rehearing denied January 9, 1906.

S. B. GRIFFITH, S. V. WOODS, and HARRY H. BYRER, for appellant.

J. HOP WOODS, for appellees.

MCWHORTER, JUDGE:

William H. Allen filed in the circuit court of Barbour county his bill of complaint against J. N. Wilkinson, Buy N. Wilkinson, D. M. Willis, W. W. Rainey and J. Truman Nixon, partners trading under the firm name of the South Penn Coal Company, alleging that prior to the 19th of April, 1902, he was negotiating with the defendants through the defendant J. N. Wilkinson, attorney-in-fact for said partners, concerning the purchase of certain coal lands on which the defendants had or were about to secure options to purchase; that the lands so to be purchased are described in a general way in a paper filed with the bill marked exhibit "Option and Acceptance," as follows:

"This agreement made this 19th day of April, 1902, between The South Penn Coal Company, by J. N. Wilkinson its Attorney in fact, party of the first part, and Wm. H. Allen, of Pittsburg, Pa., party of the second part. Witnesseth, that the said party of the first part in consideration of one dollar in hand paid, the receipt whereof is hereby acknowledged, does hereby agree to grant and option unto the said party of the second part the sole and exclusive option of purchasing all the coal under those certain tracts of land locally known as the Freeport and Kittanning or Kanawha River coals, located in the County of Barbour and the District of Philippi, State of West Virginia, and which coal lands contain about eight or ten thousand acres more or less, and to include all the farms on which the coal has been optioned and purchased in the name of the South Penn Coal

Company, which options are to be given to Wm. H. Allen, upon the depositing of the hereinafter mentioned Ten Thousand Dollars, ($10,000.00) and which coal is optioned to said optionee on the following terms and at the following prices: For the surface of the front land containing about three hundred acres, and all the coal underlying the same in fee, except the M. A. Price twenty-five acres (under which the coal is owned by J. N. B. Crim,) at the sum and price of thirty-five dollars ($35.00) per acre, and for all the coal underlying other than the surface land mentioned, at the price of Eighteen dollars ($18.00) per acre. But this option is to be absolutely null and void and of no effect whatever unless the said coal is accepted by the optionee or his assignees on the date of this contract, and all rights and claims whatsoever in and under this agreement are voidable absolutely if the said coal and land are not accepted in writing on the date of this contract. It is further agreed that if the optionee in this agreement assigns his rights under this option, that the said optionee herein shall be responsible that the assignee shall carry out his contract and the said optionee covenants that the contract will be carried out by his assignee if he assigns over this option to some third party. It is further agreed that if the coal and lands are accepted under this contract at the prices named that the said optionee or his assignee will upon the day the coal is accepted, place to the credit of the said Attorney J. N. Wilkinson, the optionor in this contract, the sum of Ten Thousand Dollars ($10,000.00), in the Traders National Bank, of Clarksburg, W. Va., as a partial payment on the coal and lands so purchased or optioned in and by this contract, or upon failure to do so, then this contract is absolutely null and void and is of no effect between the parties, but if said option is closed, and said coal accepted, then the parties making purchase of same, in addition to the prices herein named, shall pay the expenses of surveying the said coal and surface lands. It is furthermore stipulated and agreed to by the optionor that in event of the title to said three hundred acres more or less of front lands, and at least twenty-five hundred acres of coal, not being good, that the optionor will return the Ten Thousand Dollars above mentioned, to the optionee, on demand by the optionee.

"But only such part of the tract of coal and part of the surface owned by the Smokeless Coal Co., as was owned by W. W. Rainey and by him assigned to the South Penn Coal Company, is to be included in this option. Witness the following signature and seal. South Penn Coal Company, by J. N. Wilkinson, *Atty. in fact.* Witness John L. Johnson."

"Clarksburg, W. Va. April 19th, 1902. Mr. J. N. Wilkinson, Atty. for South Penn Coal Co. Dear Sir:—I hereby accept the options on Ten Thousand (10,000) acres coal and three hundred and thirty-six (336) acres in fee in Barbour County, West Virginia, at Lillian Station on the B. & O. R. R. Wm. H. Allen."

That this agreement was the result of the negotiations between the plaintiff and the said Wilkinson acting for and on behalf of the partners known as the South Penn Coal Company; that the ten thousand dollars was paid by plaintiff to defendant under the agreement; that on the 23d of May, 1902, upon the false and fraudulent representations made by said Wilkinson that an additional payment made by the plaintiff on account of the said options would expedite the securing of the field plaintiff caused to be paid to him the further sum of ten thousand dollars on account of said purchase price of said property, making the entire sum of twenty thousand dollars paid on account of said lands; that on the 30th day of July, 1902, plaintiff having become convinced that the defendants had no title to and could not get title to and deliver to him at least, three hundred acres of surface and coal designated as front land and did not and could not secure title to at least twenty-five hundred acres of mineable and marketable coal or Freeport and Kittanning or Kanawha River Coal in a compact and contiguous body lying adjacent to said front lands and mineable therefrom, notified the defendants by letter to Wilkinson, attorney in fact, that he would decline to accept a tender of the field as then controlled by them, and demanded the return of his twenty thousand dollars, which they declined to refund and prayed that the defendants might be required to refund to him the twenty thousand dollars with interest from the dates of the two payments of ten thousand dollars each respectively, and that he have a personal decree against the defendants for the same with interest and that on default of the payment thereof

he have a decree directing a sale of the options held by defendants, and also have sale of the abstracts to secure to him the payment of said sum of money, and that he have an order in default of the payment of said money, directed to the defendants to deliver to plaintiff the deeds to all of said several tracts of coal, the title of which was taken by defendants in the name of plaintiff as alleged in the bill, and for general relief.

To which bill the defendants, the firm of South Penn Coal Company, filed their demurrer assigning the following grounds:

"1st. There is no equity in the Bill, the same setting up merely an alleged contract existing between the plaintiff and the defendant J. N. Wilkinson, member of the defendant company, and the breach thereof by said defendant, and accruing damages to the plaintiff by reason thereof, to the extent of $20,000.00. This is purely a legal demand for which there is a complete and adequate remedy at Law, as shown by plaintiff's exhibit 'Option and Acceptance,' dated April 19th, 1902, filed with the bill.

"2nd There is no averment in the bill that said defendant committed, or attempted to commit, any fraud upon the plaintiff, or that he acted within the scope of his authority as the Attorney in Fact of Defendant Company.

"3rd. There is no averment that defendant Company was advised of the alleged negotiations between said defendant and plaintiff, as to the object of plaintiff in contracting with said defendant, or of the extent and character of his negotiations, or that said defendant pretended or claimed to act for it in this respect.

"4th. There is no allegation that defendant himself even agreed to transfer any options to plaintiff, or to abstract and transfer to him the abstracts of titles thereunder, or to convey or cause to be conveyed to him any deeds therefor, or to make any particular application or appropriation of the money received by him of plaintiff, or to account for the same.

"5th. There is no allegation that said defendant, or any of the members of the said defendant Company, acting for it, or the Company itself, drilled upon the land embraced in said options or located the drilling as any part of any con-

tract made by plaintiff with said defendant, or that plaintiff had any authority from defendant Company, the said defendant Wilkinson, or any other member of defendant Company, or had the consent of them, or either of them, to drill upon the land embraced in said options, or any of them.

"6th. There is no averment made, or reason given, in plaintiff's Bill which imposed upon said defendant Wilkinson any obligation to transfer options to plaintiff, or take title to him for land embraced therein, and there is therefore no premise to predicate the prayer of the Bill that the options be sold and the deed surrendered to plaintiff, neither is there any allegations upon which to predicate the prayer that said abstracts be sold.

"7th. The bill is multifarious in that it avers that subsequent to the 9th of April, 1902, the date of the alleged contract between the plaintiff and said defendant, the plaintiff on the 30th day of July, 1902, declined, in a letter to said defendant, to comply with said contract, and yet prays substantially, in default of the re-payment of said $20,000.00, for a compliance therewith on the part of said defendant. This prayer is inconsistent with said averment.

"8th. There is no imputation of fraud upon the part of said defendant Company, no prayer for discovery and no averment of the ground of equitable jurisdiction."

On the 10th of November, 1903, the plaintiff joined in said demurrer and the same being argued was sustained and the plaintiff given leave to amend his bill.

The plaintiff filed an amended bill making parties thereto the same parties defendants as in the original bill, and also T. Moore Jackson, surviving partners of themselves and C. Spriggs Sands, in his own right, and also as partners doing business under the firm name of South Penn Coal Company, and Lulu Sands, executrix of C. Sprigg Sands, deceased, and Edward H. Compton, clerk of the county court of Barbour county, alleging that the defendant, J. Neuton Wilkinson, represented himself to plaintiff as the agent and attorney in fact, for all of the other defendants, including the said coal company, and having full power and authority to act for them in his representations and negotiations in respect to said coal and lands; that he falsely and fraudulently represented to the plaintiffs that the South

Penn Coal Company owned or had under its control by contract of purchase the said lands and coal; that the land was underlaid throughout its extent with the Freeport and Kittanning or Kanawha River Coal of a merchantable and marketable character, ranging in thickness to from four to six feet with good title thereto and free from encumbrances and litigations, and other legal entanglements, which defendants could sell to the plaintiff and deliver to him speedily; that there were three hundred acres of front land, at least, under the control of said defendants which they could sell to the plaintiff in fee, at thirty-five dollars an acre and that adjacent thereto and contiguous therewith was not less than twenty-five hundred acres of coal under their control which could be made speedily available and adjacent to that another large body of eight thousand acres of coal which the company controlled and could deliver to plaintiff underlaid with the said coals, without unreasonable delay, and free from litigation; that said Wilkinson with a large plat which he had before him for the purpose, embracing all that section of Barbour county comprising the land which he pretended to be under the control of the South Penn Coal Company, and including those upon which the said company had contracts and for which he represented it had titles, pointed out to plaintiff upon said plat the three hundred acres of front land and pointed out the several tracts going to make up said three hundred acres and upon which he represented there was a side track, coal tipple, mine openings and facilities already in use for marketing the coal; that Wilkinson was then the agent and attorney in fact, with full power and authority to act for all the defendants in respect to the said representations and proposal and had full power to act for all the defendants including the said coal company, of which representations all the defendants had notice; that the said three hundred acres of front land was necessary and indispensible to such a mining and coking plant as plaintiff desired to establish, for mining and removing the coal thereunder and under the said twenty-five hundred acres; that the defendants did not, nor did any of them, nor did the said coal company own or control the three hundred acres of front land or any part thereof, except the O'Neal eight acre lot, and the interest of said Rainey in

the Snyder land containing about thirty-six or thirty-seven acres (which interest in fact, was only one-fifth thereof,) which the said defendants and all of them and the said coal company knew at the time of said representations to the plaintiff, and also knew on said 19th day of April, 1902; that after all the foregoing representations had been made to him and when he supposed he was dealing with an honorable and trust worthy man in whose representations for himself and all of the defendants plaintiff had implicitly relied, the said South Penn Coal Company through Wilkinson its attorney in fact, made to plaintiff the proposition of the 19th day of April, 1902, (and which is hereinbefore copied;) that plaintiff deposited the said ten thousand dollars in the bank as provided and was received by the South Penn Coal Company upon the terms of said conditional acceptance through its agent, Wilkinson, who fraudulently withheld said options from plaintiff; that the coal, called in said proposition twenty-five hundred acres and the front land called three hundred acres and the coal lands referred to therein as containing eight or ten thousand acres are the same pointed out on said plat by Wilkinson, and which he for himself and other defendants proposed to sell to plaintiff with good titles and free from litigation and entanglements; that the said coal company did not have the title or the options to all of the said lands or the coal at the time of said proposition, or since that time, nor did they have the three hundred acres of front land, nor the options thereto, nor the control thereof, nor the twenty-five hundred acres of coal as contemplated by the said proposition or the acceptance thereof or as contended by the parties thereto, or as understood by the plaintiff or as represented to him by the defendant Wilkinson, of which the defendants had notice; further alleging that the defendants fraudulently and without plaintiff's knowledge used of the ten thousand dollars to the extent of seven thousand dollars thereof for the purpose of buying out and hushing up the claims of title held by George M. Price & Co., upon about four thousand acres of the coal proposed to be sold to plaintiff; that defendants without plaintiff's knowledge after receiving said money from him brought suit in Barbour circuit court and filed a bill against George M. Price & Co. seeking to enjoin and restrain them from taking title under

their option to the said four thousand acres upon which the South Penn Coal Company had afterwards taken option at ten dollars an acre and which, among other things, that the contract of said Price & Company, the land owners, were invalid and of non-effect as against the South Penn Coal Company in which such proceedings were had that on the 15th of May, 1902, the court enjoined both the South Penn Company and the Price Company from taking title until the further order of the court to any of said coal in respect to which there was conflict and litigation between them, and filed with plaintiff's bill a copy of said bill and order; which proceeding was unknown to plaintiff; that said Price & Company entered into a written agreement with the South Penn Company by which their differences were settled and the suit dismissed, which contract was in possession of defendants or some of them and the contents unknown to plaintiff and the same was fraudulently concealed from him and had never been recorded; that on the 19th day of May, 1902, George M. Price and the several persons composing the firm of Price & Company executed a deed conveying to plaintiff William H. Allen four parcels of land, the N. M. Phillips one hundred and fifteen acres tract, the Ella V. Haller eighty-five acres tract, the Ida B. England sixty-nine acres tract and the Cordelia J. Boyles twenty acres tract which said deed was signed, sealed and acknowledged by George M. Price and his wife, W. F. Merrill and his wife, E. H. Hoult and his wife, E. F. Hoult and his wife and Joseph McElfresh, who composed the firm of George M. Price & Company, and being so acknowledged was delivered by W. F. Merrill to J. N. Wilkinson; that after said deed was so delivered by the grantors the defendant, J. N. Wilkinson, fraudulently removed one sheet of the type-written paper upon which the original deed was drafted and inserted in lieu thereof another sheet of paper in which J. N. Wilkinson was made the grantee and, also removed the wrapper from said deed and replaced it by a new wrapper which was endorsed in the handwriting of Wilkinson, which deed was fraudulently concealed until after this suit was brought, then, as so changed and altered, the 23d day of October, 1903, was filed in the office of the clerk of the county court of Barbour county for recordation, of which all the defendants had

notice; that the South Penn Coal Company on the 29th of April, 1902, took from Marietta Lance and her husband a deed for the coal under a tract of one hundred and thirteen acres of land owned by them, for the consideration of eleven hundred and thirty-eight dollars, which was paid to Lance out of the money furnished by plaintiff; that said deed conveyed the land to plaintiff Allen and was delivered into the possession of J. N. Wilkinson who fraudulently removed one of the type-written pages of said deed and inserted another in the room thereof and removed the cover with a type-written endorsement and caused another cover to be placed thereon by which change the name of J. N. Wilkinson was made the grantee therein, which deed was also fraudulently concealed until the 23d of October, 1903, when it was recorded, all of which was well-known to the defendants; that said deeds had been falsely and fraudulently changed for the purpose of defrauding the plaintiff of his title to said coal, which plaintiff charged was paid for with the money so furnished by him; that said original deeds bear upon their face the unmistakable evidence of the said fraudulent alterations and plaintiff called upon the said Wilkinson and other defendants to produce the said deeds which were then in the custody of Compton, clerk of the county court of Barbour county, for the inspection of the court; that after the money of the plaintiff was so obtained said J. N. Wilkinson obtained from John F. Woodford a deed, on the 23d day of July, 1902, for one hundred and fifteen acres of land at the price of three thousand dollars, one-half of which was paid and the residue in one and two years with interest, and on the 15th of March, 1903, he obtained a deed from John B. Pitman and wife for the coal under twenty-five and three-fourths acres of land at Lillian for two hundred and twenty-one dollars, sixty-two cents, paid, and on the 3d of April, 1903, he obtained a deed from Hayes Howell and wife for five hundred thirty-three dollars, twelve cents, in hand paid for the coal under fifty-nine acres of land, which deeds were filed for record by him on said 23d of October, and copies of the said five deeds were exhibited with the bill. Plaintiff charges that all of the said lands so conveyed and pretended to be conveyed to said Wilkinson were paid for out of the money and property of plaintiff and were held in trust for him by the said Wilkin-

son whether he took the title for the fraudulent purpose of deceiving the plaintiff by concealing his ownership or whether he took the title in his own name in order to hold the same as trustee for himself and the other defendants composing the said South Penn Coal Company; that a large part of the money so furnished by plaintiff was in fact used and expended by the defendants in small payments upon options from land owners unknown to plaintiff; in making surveys of said coal lands and in abstracting the titles thereof for the benefit of plaintiff not at his request, but which were intended as he was informed, to be delivered to him that he might know the true state of the title of said several tracts and the location and boundaries of the several parcels of coal which he charged were fraudulently concealed and withheld from him by the defendants.     Plaintiff further alleged that at the request of defendants and in order to facilitate their work in perfecting the titles to said lands and learn the quality of said coal plaintiff sent out upon said land a competent and capable diamond driller and directed the said drillers and the defendants to begin on the land with the drilling near the front at Lillian and thence drill toward the turnpike on a line running South 45 East, giving particular directions where the holes were to be put down; that the defendants, through the defendant Nixon, without plaintiff's knowledge upon the arrival of the drillers took charge of them and began to drill the land contrary to plaintiff's instructions, on the Eastern extremity of said coal field upon lands under contract to George M. Price & Company where they found but eighteen inches of coal and then drilled westward toward Lillian and no place finding any coal that was marketable and merchantable or four or six feet in thickness, and which drilling the defendants procured to be contrary to plaintiff's instructions for the purpose of ascertaining what coal was lying below the level of Bill's Creek and Sugar Creek in respect to which levels they had made some contracts for coal. with which plaintiff had nothing to do and in which he was in nowise interested, for which said drilling plaintiff was obliged to pay and did pay thirty-six hundred dollars which the defendants fraudulently expended and appropriated to serve their own ends and not for the benefit of plaintiff; that on the 30th of July, 1903, after being fully satisfied by unreasonable delays, defects of

title, conflicts of claims, the fraudulent action of said drillers the inability of defendants to obtain the titles proposed to be sold, etc., plaintiff notified the defendants through their attorney in fact, Wilkinson, that he refused to accept said coal field and demanded the return of the twenty thousand dollars and the thirty-six hundred dollars, all of which the defendants and all of them fraudulently failed and refused to refund and likewise refused to deliver to the plaintiff any of said contracts or evidences of title or of the title to any of the coal proposed to be sold; that the defendants, through J. N. Wilkinson and W. W. Rainey who were acting for them and with their knowledge and approval, for the purpose of deceiving and cheating plaintiff and fraudulently procuring from him said moneys, and knowing their representations to be untrue and knowing themselves to be unable to make good their representations or to deliver to plaintiff the property to be sold to him, falsely represented that the said front three hundred acres at Lillian was underlaid with Kittanning Freeport coal of six feet in thickness and· that the said thickness extended through the said three hundred acres and the land contiguous thereto; that the plaintiff relied upon the truth of said representations and was cheated and deceived by the defendants and so induced to part with his money and relying upon the truth of said representations plaintiff had arranged to borrow and to have furnished to him and made immediately available in order to pay for said lands and to install thereon a large mining and coking plant, the sum of four hundred thousand dollars and made contracts to furnish coal and coke from said lands and made traffic contracts for the shipping thereof, the truth being that the said coal did not underlie said lands as represented to plaintiff, and did not show three veins of said coal from four to six feet in thickness of merchantable and marketable coal underlying all of the lands proposed to be sold to the plaintiff.   Plaintiff prayed for a rescission of the proposition and acceptance made on the 19th of April, 1902, and that defendants be required to answer and disclose the dispositions made by them of the ten thousand dollars paid on the 19th day of April, 1902, and the ten thousand dollars paid on the 24th of May, 1902, and the parts thereof paid upon options, to any of the land owners, and that they be required to disclose all purchases and pay-

ments made in the name of plaintiff and all the titles to land
or coal taken in the name of plaintiff, and to surrender all
the contracts, deeds and title papers in respect thereto; that
they disclose their purchases and contracts for lands or coal
taken in the name of Wilkinson or any other defendants and
of the said several tracts purchased by the defendants or any
of them in his name or in the names of any of them or in the
name of the plaintiff from George M. Price & Company, and
to disclose the said contract made with the George M. Price
& Company; that the said Wilkinson might be required to
disclose the said power of attorney shown by him to the
plaintiff and all the title papers in his possession and to pro-
duce and disclose the said map and plat and the deeds and
contract for coal or land purchased or in part paid for with
the money of plaintiff and to disclose and surrender all of the
abstracts surveys and plats and options relating to the said
land and coal under the control of the said defendants or any
of them; that he have a decree against the defendants for the
sum of twenty thousand dollars and for the thirty-six hun-
dred, and that the same be decreed to be considered a lien
upon the said options, plats, abstracts and liens in the pos-
session of the defendants or any of them, paid for in whole
or in part with the money so obtained from plaintiff; that the
defendants be required to produce and file in court with their
answers the contract in writing of George M. Price & Com-
pany, and the original deeds from George M. Price *et al.*
and Marietta Lance and her husband to J. N. Wilkinson,
dated on the 19th day of May, 1902, and on the 29th of April,
1902, respectively, for the inspection of the court, and that
the defendant, J. N. Wilkinson be required to answer and
say who changed said deeds and why the same were concealed
and not recorded instead of being held until the institu-
tion of this suit, and that the other defendants be required
to answer and say whether they authorized or directed the
said J. N. Wilkinson to take title to himself or for any of
the said coals and who paid the purchase money therefor and
what money was applied in payment therefor, and especially
whether any of the defendants contributed any of the money
paid to Price & Company, Marietta Lance, Hayes Howell
and wife, Joseph Pitman and wife or John F. Woodford and
wife for the coal so purchased from them; that Compton,

clerk of the county court, be restrained from delivering to Wilkinson or any other person until the further order of the court the said original deeds of Price *et al.* to Wilkinson dated May 19, 1902, and Marietta Lance to him, dated April 29, 1902, and for general relief.

The defendants, by counsel, entered their demurrer to the plaintiff's amended bill assigning the same grounds assigned in writing to the plaintiff's original bill, in which the plaintiff joined and same being argued was sustained by the court and the plaintiff's bill and amended bill were dismissed and decree for costs, the dismissal being without prejudice.

It is contended by appellees that there is no equity in the bill, the same setting up merely an alleged contract existing between the plaintiff and the defendant J. N. Wilkinson, a member of the firm, and that the same is purely a legal demand and there was complete and adequate remedy at law. This would be a proper legal proposition if plaintiff was suing alone to recover the twenty thousand dollars which he shows by his bill was fraudulently procured from him by the defendant J. N. Wilkinson, acting for himself and the other defendants all of whom together constituted the firm of or partnership of South Penn Coal Company, and which fraudulent acts on the part of defendant J. N. Wilkinson were on behalf of himself and the other members of the company, of which they all had notice, and it is distinctly alleged that the said Wilkinson as agent and attorney in fact had full power and authority to act for the other defendants in his representations and negotiations in respect to the coal and land properties mentioned. The bill and especially the amended bill, is not brought to enforce the contract of April 19, 1902, but to rescind the same and for a discovery as to the disposition made of the twenty thousand dollars so fraudulently obtained from the plaintiff and to disclose all the purchases and payments made in the name of plaintiff with his money and all the titles to all land or coal taken in his name and to require them to surrender the contracts, deeds and title papers in respect thereto, and for a discovery as to the purchase and contracts and deeds for coal lands whether taken in plaintiff's name or the name of the defendants or any of them, and paid for wholly or in part with the money of plaintiff. The bill distinctly charges the fraudulent changing

of deeds executed to plaintiff as vendee and delivered to Wilkinson and changed to the name of Wilkinson, as grantee, with the knowledge of the defendants, for whom he was acting in such fraudulent transaction.

The demurrer interposed in the name of the South Penn Coal Company was the demurrer of all the defendants in their partnership capacity and is an admission of the truth of the allegations of the amended bill. In *Shaw* v. *Allen*, 184 Ill. 77, (56 N. E. 403), it is held that: "On demurrer to a bill all the material facts well pleaded are taken as true." *Grieg* v. *Russell*, 115 Ill. 646, (4 N. E. 780); *Clark* v. *Assurance Association*, 43 L. R. A. 390. The meaning of a demurrer is, that admitting the allegations of the bill or declaration to be true they are not sufficient to sustain the action. It will hardly be contended that in an action at law for the recovery of money the plaintiff could recover the lands which were conveyed to him, nor the possession of the deeds for the same, which were fraudulently withheld from him, nor could it charge with plaintiff's debt the land purchased and paid for with the money of plaintiff so fraudulently obtained from him by false representations of the defendants and their agent and attorney in fact, the title to some of which lands was claimed to be taken in the name of said Wilkinson. It is well settled that if a bill in equity shows any cause for relief the general demurrer thereto must be overruled. In *Moore* v. *Harper*, 27 W. Va. 362, (syl. pt. 1), it is held: "A bill in equity, notwithstanding it contains many vague and irrelevant allegations will not be held bad on demurrer if taken as a whole it states facts which entitle the plaintiff to relief." And in *Miller* v. *Hare*, 43 W. Va. 647, (syl. pt. 1): "A general demurrer to a bill in equity is properly overruled, if the bill as a whole states facts which entitle the plaintiff to relief." And in *Whitlock* v. *Duffield*, 2 McCoun (N. Y.) 365: "If a right to any relief be shown by a bill, a demurrer will be overruled." *Gay* v. *Skeen*, 36 W. Va. 582, and in *Chrislip* v. *Teter*, 43 W. Va, 356, it is held: "When fraud is sufficiently alleged with proper parties to a bill a demurrer will not lie." And "When a court of equity takes jurisdiction of a cause for one purpose, it will go on and dispose of the questions involved to avoid a multiplicity of suits." *Hanly* v. *Watterson*, 39 W. Va. 214; *Yates* v. *Stuart*, *Id.* 124;

*Watson* v. *Watson*, 45 W. Va. 290. "A court of equity in all cases of actual fraud has concurrent jurisdiction with a court of law, in remedying the fraud;" and being more flexible often gives a more certain and complete remedy "By means of its power to compel discovery and to cause fraudulent deeds and securities to be cancelled, or conveyances to be made, thus effectually putting an end to further litigation. In those cases of actual fraud equity follows the law, and gives relief to the full extent to which a court of law could give relief." *Garland* v. *Rives*, 4 Rand. 282, 307, citing *Bennett* v. *Musgrove*, 2 Ves. Sen. 51. In 1 Story's Eq. Jures., (13th Ed.), at section 191 it is said: "One of the largest classes of cases in which courts of equity are accustomed to grant relief is where there has been a misrepresentation or *suggestio falsi.* It is said, indeed, to be a very old head of equity, that if representation is made to another person going to deal in a matter of interest upon the faith of that representation, the former shall make that representation good if he knows it to be false." And cases there cited. Appellees contend that they are not required to answer the written proposition because it was not specifically filed with the amended bill, that it is not certain that it is the same paper called "Exhibit Option," and filed with the original bill. It is made sufficiently clear by the amended bill that the "Written proposition and acceptance" is the same paper as that filed with the original bill, as large portions of it are quoted, including the written acceptance signed by the plaintiff and having been filed as an exhibit with the pleadings it continued a part of the cause and the reference to it in the amended bill is sufficient. The amended bill is good on demurrer and the court erred in sustaining the demurrer.

The decree of the circuit court is therefore reversed and the cause remanded for further proceedings to be had therein according to the rules governing courts of equity.

*Reversed.*