MINNIE P. ROBINSON, *Executrix, etc. v.* ALAN H. ROBINSON *et al.*

(No. 7137)

Submitted March 1, 1932. Decided March 22, 1932.

*Austin V. Wood, Wilmer L. O'Flaherty, James Paull, Jr.,* and *Ewing & McGinley,* for appellant and appellee Edith E. Robinson.

*Carl G. Bachmann* and *J. Bernard Handlan,* for other appellees.

MAXWELL, JUDGE:

The plaintiff appeals from a decree of the trial chancellor dismissing the bill, which had for its purpose the cancellation of a certain deed, a deed of trust and a declaration of trust, and incidental relief. The principal parties are members of one family. The controversy involves primarily the estate of W. P. Robinson, deceased, and secondarily, the affairs of a

joint adventure in which he was interested with two sisters and a brother.

Covering a period of years beginning about 1902, two sisters and two brothers, Ella D. Robinson, Lucy E. Robinson, W. P. Robinson and Alan H. Robinson, were jointly concerned in a valuable piece of property, known as the Waldorf property, located on Market Street in the city of Wheeling. An initial interest in this property was acquired by these persons in 1902, the property in its entirety being acquired by them at a judicial sale in 1905, at which time title was taken in Ella D. Robinson. The total cost was $33,000.00. Very promptly after acquiring the property they borrowed of one Chambers $30,000.00, of which they applied $22,000.00 to the payment of the balance of the purchase money and the residue was applied on construction of a new building. Approximately $27,000.00 more was borrowed by the parties from various banks and individuals and put into the project. The building is said to have cost not to exceed $25,000.00. The lot and building cost, in the aggregate, about $57,500.00.

The brothers and sisters jointly concerned, it is testified by the survivors of them, made individual contributions to the enterprise from the time the lot was purchased in 1902. The two sisters were teachers and the brothers were partners in the practice of the law. Alan served for a time as police judge of the city of Wheeling and subsequently, from 1913 to 1924, as judge of the criminal court of Ohio County. About $500.00 a month was realized as rental income from the building upon its completion.

In February, 1914, the parties voluntarily entered into a trust agreement for the purpose of terminating the joint adventure. A deed from Ella, in whose name the property had stood for some time in trust for the others, was executed and delivered to W. P. Robinson who in turn, his wife, Edith, joining therein, gave a deed of trust on the property so conveyed. At the same time W. P., Alan H., Lucy and Ella Robinson joined in signing and acknowledging a declaration of trust which provides that W. P. Robinson would assume the payment of all indebtednes against the Waldorf property, totaling $57,500.00, and thereafter pay to Alan, Lucy and

Ella $10,000.00 each. The instrument was prepared in quadruplicate and a copy given to each of the two brothers and two sisters. No notes were executed. The deed to W. P. Robinson was not recorded by him until 1917, about one month before his death due to accidental injury. The deed of trust was not recorded until 1921.

In 1922, the property was sold under the deed of trust by Alan H. Robinson as agent for the trustee who was not present at the sale, and purchased by him for Ella Robinson as her agent for $24,000.00, subject to deed of trust in favor of one Chambers for $30,000.00. Alan had in his possession at the time of the sale under the deed of trust a written agreement of sale of the property to one Christ Varvouzanis for $80,000.00. Pursuant to this agreement Alan tendered a deed to him but he refused to purchase the property.

An anomalous appraisement of the estate of W. P. Robinson, admitted to record about three months after his death, disclosed that the estate was insolvent. The assets were listed at $67,837.96 and the liabilities at $92,340.02.

The original plaintiff, R. J. Robinson, was a brother of Alan, W. P., Lucy and Ella. After his death the suit was revived in the name of his wife, Minnie P. Robinson, executrix of his will. It is alleged in the bill that the two sisters and brothers, defendants, were fraudulently attempting to defeat the original plaintiff's interest in the estate of W. P. Robinson. Edith Robinson, defendant, widow of W. P. Robinson, and administratrix of his estate together with Alan H. Robinson, administrator, by her answer accepted as true the allegations of the bill and joined in the prayer thereof, in effect becoming a party plaintiff.

In support of the allegations of fraud, R. J. Robinson testified that defendants were never in financial position to contribute $10,000.00 each to the Waldorf enterprise. He testified also that Alan told him that the deed of trust was found among W. P. Robinson's personal effects after his death (therefore had never been delivered); that it did not amount to anything; that W. P. Robinson did not owe Lucy, Ella nor him anything; and that the deed of trust was placed

on record only to keep down the inheritance tax. His son, Frank C. Robinson, testified similarly.

Edith Robinson testified that she knew nothing about the deed of trust nor the declaration of trust until 1920 or 1921; that the signature on the deed of trust looks like hers, but she does not remember signing it; that the indebtedness against the estate proved to be more than twice that represented to her and that she had never heard defendants claim that W. P. Robinson was in any wise indebted to them.

Defendants, Lucy, Ella and Alan Robinson, assert that the entire transaction and the negotiations incident thereto which culminated in the signing by each of the declaration of trust and the execution and delivery of both the deed and the deed of trust, were *bona fide* and for a valuable consideration; that they arrived at a mutual understanding regarding the importance and necessity of securing to each that which had been paid into what they term a co-partnership arrangement for the purpose of financing the Waldorf enterprise.

The evidence adduced by plaintiff and Edith Robinson does not support the allegations of fraud. Much of the indebtedness assumed by W. P. Robinson was unquestionably *bona fide;* some of it he paid before his death. There could be no complaint about that. And, even if it be assumed that the $30,000.00 to Ella, Lucy and Alan, and possibly other items, were gratuitous, on what basis can the plaintiff complain? The agreement culminating in the execution of the declaration of trust, the deed, and the deed of trust represents voluntary conduct between parties *sui juris,* jointly associated. If W. P. Robinson, then in the prime of life and with established earning capacity, saw fit to recognize that he owed his maiden sisters and his brother Alan a sum certain, why did he not have that privilege? If it had been a scheme to defeat creditors, that would be another story. It was no concern of plaintiff's as to what his brother W. P. did with his own property. He could give it to whom he pleased, or encumber it as he chose. As to W. P. Robinson's widow, the defendant, Edith Robinson, who appears to be an educated woman, the evidence seems conclusive that she not only executed and acknowledged the deed of trust, but that

before she did so, she heard the declaration of trust read and was fully advised of its import. Two disinterested witnesses stated that W. P. Robinson had told them frequently that the property was owned jointly by him, his two sisters and Alan. On this theory, of course, the case is all the stronger against the plaintiff and the defendant, Edith Robinson.

Plaintiff asserts that the sale of the property under the deed of trust was irregular and not according to law because, first, the trustee was not present, and second, Alan, acting as agent for the trustee, purchased the property, the subject of the trust, as agent for his sister Ella. Such practice is condemned by the courts generally. In the case of *Morriss* v. *Virginia State Ins. Co.*, 18 S. E. 843, the supreme court of Virginia held: "Trustees in deeds of trust must act in person, and not by agent." In the case of *Fleshman* v. *Hoylman*, 27 W. Va. 728, this court held that a trustee seeking to enforce the collection of a trust debt could not be permitted to occupy the inconsistent position of seller and purchaser of the trust subject. In accord: *Harrison* v. *Manson*, 95 Va. 593, 29 S. E. 420. The same case is authority for the proposition that such purchases are voidable.

Of course, however, such sale can be set aside only at the instance of a party in interest. As demonstrated, neither R. J. Robinson, plaintiff, nor Edith Robinson, defendant, is a party in interest. The only possible basis on which they would have an interest would be on a showing that at a sale under the deed of trust, the property should sell for more than enough to discharge all of the items of the declaration of trust ($87,500), so as to leave a surplus for the widow of W. P. Robinson and the distributees of his estate. The record does not contain evidence tending to establish such high value of the property.

Believing that the trial chancellor's laconic finding "The weight of the evidence supports the contention of the defendants" is the finding which is required by the record, we affirm his decision. "In equity the findings of fact of the trial chancellor will not be disturbed on appeal unless at

44

variance with undisputed evidence or contrary to the plain preponderance of the whole evidence." *Kincaid* v. *Evans*, 106 W. Va. 605, 146 S. E. 620.

*Affirmed.*