EMERY'S MOTOR COACH LINES, INC., *et al.*

*v.*

MELLON NAT'L BANK & TRUST CO. OF PITTSBURGH, *et al.*

(No. 10359)

Submitted September 25, 1951. Decided December 18, 1951.

736

*Martin & Seibert* and *Clarence E. Martin, Jr.,* for appellants.

*Rice, Hannis & Rodgers, L. I. Rice, Reed, Smith, Shaw & McClay, Charles E. Kenworthey* and *Edward W. Marsh,* for appellees.

LOVINS, JUDGE:

This suit was brought in the Circuit Court of Berkeley County by Emery's Motor Coach Lines, Inc., a corporation, and Robert L. Emery, Jr., against Mellon National. Bank and Trust Company of Pittsburgh, Pennsylvania, a. national banking corporation, L. I. Rice, Edward W. Marsh, George M. Beltzhoover, Jr., trustees, and Potomac Coach Lines, Inc., a corporation. The trial court sustained a demurrer to the original and amended bills of complaint and accorded plaintiffs the privilege of amending. Upon their declining to amend their pleadings, the bills of complaint were dismissed. Plaintiffs prosecute this appeal.

The original bill of complaint prayed for an injunction to restrain the sale of property under a deed of trust. A temporary injunction was granted, and, upon the dissolution thereof, plaintiffs filed an amended bill of complaint in which they sought to set aside the sale made under the deed of trust, to restrain further attempts to sell or transfer the property, to enjoin an action at law pending against the plaintiffs to recover a deficiency in the price obtained at the trustees' sale, to restore all rights and property transferred as a result of the trustees' sale, a decretal judgment for damages as a result of the trustees' sale, and to restrain any creditors of the plaintiff corporation from enforcing any claims against it. From a recital in the final decree, it seems that the amended bill was amended by the addition of a paragraph which is recited in the decree.

Robert L. Emery, Jr., hereinafter designated as "Emery", doing business as Emery's Motor Coach Lines, Inc., operated an interstate and intrastate bus line with principal offices in Martinsburg, Berkeley County, West Virginia. Emery obtained a loan in the principal amount of $102,000 from the Mellon National Bank and Trust Company of Pittsburgh, Pennsylvania, hereinafter designated as "bank". The indebtedness was evidenced by a promissory note executed on January 10, 1947, by Emery, payable to the bank in monthly installments of $4,000 each. The note was made subject to the terms of an instrument called "Bank Loan Agreement", and was secured by a deed of trust on Emery's motor vehicles, franchise permits, certificates of public necessity and convenience, and good will. The bank loan agreement, hereinafter referred to as "agreement", and the deed of trust were executed simultaneously with the note.

The agreement contained certain representations made by Emery as conditions precedent to the loan, and covenants to be performed by Emery during the existence of the loan. It is unnecessary to state those covenants in detail. It suffices to say that Emery covenanted to pay all taxes on the property, to keep the same in repair, to

insure the property, and not to create any encumbrances upon the trust property in favor of any person other than the bank, but an obligation then existing in favor of The Standard Oil Company of New Jersey in the amount of $15,000 was permitted to remain. The following were to be treated as defaults, authorizing foreclosure under the deed of trust: (1) failure to pay any installment when due; (2) non-performance of any covenant or the breach of any representation by Emery; (3) the insolvency of Emery; and (4) the levy upon or attachment by legal process of any of the property given as security for the loan.

It was provided that if Emery failed to perform the covenants in any of the particulars mentioned above, the unpaid balance of the loans would become immediately due and payable without presentment, demand, protest, or further notice, all of such rights being expressly waived by Emery.

George M. Beltzhoover, Jr., L. I. Rice, and Edward W. Marsh, hereinafter called "Beltzhoover", "Rice", and "Marsh", respectively, were named trustees in the deed of trust. That writing provided that in the event of default the bank might make written demand that the trustees, any two of whom could act, sell the property at public or private sale. Such sale could be postponed without further notice to anyone. The bank was expressly authorized to bid upon and purchase any or all of the trust property. The trustees, before sale, were required to advertise such sale in one or more newspapers of general circulation in Berkeley County, West Virginia, or Allegheny County, Maryland. The notice was required to be published once prior to the day of sale, personal notice of such sale being expressly waived by Emery.

Emery agreed that if the loan should be increased that he would execute supplemental deeds of trust. In accordance with that agreement, Emery executed a supplemental deed of trust on February 10, 1947, and another supplemental deed of trust on May 10, 1947. The two sup-

plemental deeds of trust executed by Emery did not alter the material provisions of the original deed of trust, the agreement and notice. At the date of the execution of the second supplemental deed of trust, the total indebtedness was evidenced by a new note.

Emery incorporated his business under the name of "Emery Motor Coach Lines, Inc.", hereinafter referred to as "company".

The company, on July 31, 1947, assumed the obligation of Emery then owing to the bank, for which the company gave its note, with Emery as surety, and entered into a bank loan agreement upon the same terms as those contained in the agreement hereinabove mentioned. After assumption of the obligations to the bank, the company executed five other supplemental deeds of trust to secure additional loans from the bank. The last of such instruments, dated October 8, 1948, at which time the debt to the bank amounted to $127,000, entitled "Seventh Supplemental Deed of Trust", together with the original deed of trust, are the instruments under which the sale here considered was made.

The bank, by letter bearing date October 3, 1949, addressed to Robert L. Emery, Jr., President, informed him that unless the company made a payment of $4,000 on the principal of its indebtedness before October 30, 1949, and made continued payments in such amounts on or before the last day of each succeeding month, the bank would instruct the trustees to foreclose under the deed of trust. That letter was received by Emery on October 5, 1949, and at that time the indebtedness of the company to the bank amounted to $85,300. Rice and Marsh, without personal notice to Beltzhoover or the company, on October 26, 1949, caused to be inserted a notice in a newspaper of general circulation in Berkeley County, West Virginia, that they would proceed to sell under the deed of trust at Martinsburg, Berkeley County, West Virginia, on October 28, 1949.

Emery and the company filed their bill of complaint on October 28, 1949, to enjoin such sale, contending that there was no default under the deed of trust so as to justify the sale, though there are no allegations in the bill which affirmatively show the absence of such default; that proper notice of such sale had not been given; that the sale on such a notice would necessarily result in an inadequate sale price, which would not be equal to the depreciated book value of the property proposed to be sold, which was estimated according to the bill of complaint at approximately $130,000; and that irreparable damage would be caused by a sale in such circumstances. On the date the bill was filed the Circuit Court of Berkeley County enjoined Rice and Marsh from proceeding with the sale until the further order of the court. By another order, allegedly made *nunc pro tunc* on December 12, 1949, the order of October 28, 1949 was amended so as to permit the trustees to continue the sale by oral proclamation until October 31, 1949. Notice of the sale to be held on October 31, 1949, was published in a Martinsburg newspaper on October 28, 1949.

The temporary injunction theretofore granted was dissolved by the trial court on October 31, 1949. On the same day the property was sold by Rice, acting alone. Marsh did not participate therein. The property was purchased by the bank for the sum of $79,000, through Rice acting as its agent. On the same day the bank sold the property to Potomac Coach Lines, Inc., a corporation, hereinafter designated "Potomac", for the sum of $85,289.12 and $318.30 interest.

By an agreement between the bank and Potomac, entered into on November 2, 1949, effective as of October 31, 1949, the bank lent Potomac $90,607.42, for which loan Potomac gave its note secured by a pledge of all of Potomac's issued stock and a deed of trust on the property purchased by Potomac.

The note was to be paid by monthly installments of an amount equal to the monthly depreciation charged on

such of the motor vehicles as Potomac retained in operation. Potomac was given power to sell such of the vehicles as were not needed in its operations. If, at the end of the year, Potomac found the business unprofitable, it could terminate the agreement and transfer all the corporate assets to the bank.

The bank has commenced an action at law by way of notice of motion for a judgment against both plaintiffs to recover the difference between the amount for which the property sold and the unpaid balance of plaintiffs' indebtedness to the bank at the time of such sale together with the costs incident to the foreclosure.

In their amended and supplemental bill of complaint the plaintiffs make many contentions, most of which we deem immaterial. It suffices to say that their principal contentions are: (1) that the sale was made upon unreasonable notice, and (2) that Rice could not conduct the sale as sole trustee.

Defendants demurred to the bills of complaint upon many grounds, which we do not deem necessary to state in full. The controlling grounds are: (1) that proper and sufficient notice of the intention to sell was duly given, and (2) that there is no positive rule of law inhibiting a trustee acting for two of the trustees.

We think that the controlling questions may be summarized as follows: (1) Was the notice of sale reasonable and sufficient? (2) Could one trustee be permitted to sell the property when the trust deed provided that two trustees should perform the duties devolving upon them?

A preliminary question is raised by the defendants with reference to the right of the plaintiffs to maintain this suit, it being contended that the plaintiffs have no interest in the property sold. They cite in support of their contentions the case of *Robinson* v. *Robinson,* 112 W. Va. 39, 163 S.E. 633. No evidence was taken in this case, but the allegations of the bill of complaint, which,

if well pleaded, are taken as true on demurrer, show that the value of the property sold was in excess of $100,000. For that reason we do not think that the case of *Robinson* v. *Robinson, supra,* prevents the maintenance of this suit by plaintiffs.

The deed of trust, in providing for the notice to be given in the event of sale, reads in part as follows: "Before making any such sale said Trustee, or the two acting hereunder, shall advertise *their intentions* to sell in one or more newspapers * * * once prior to the day of sale * * *." (Emphasis supplied.) We treat that language as requiring a notice of sale.

The statute applicable to notices of sale under deeds of trust provides, in effect, that (1) unless otherwise provided, or (2) in the opinion of the trustee the property to be sold be of less value than $300, such trustee shall publish a notice of a sale at least once a week for four successive weeks preceding the date of sale in some newspaper published in the county wherein the property is located. Code, 38-1-4. In the case at bar it is otherwise provided, in that only one publication in one or more newspapers of general circulation in Berkeley County, West Virginia, and Allegheny County, Maryland, is required. The time of such notice is not provided in the deed of trust here considered. As hereinabove stated, the notice was published in a newspaper in Berkeley County, West Virginia, one time, on October 26, 1949, for a sale to be made October 28, 1949. Thus only two days elapsed between the publication of notice and the date of the proposed sale.

We have been cited to a number of cases in this jurisdiction involving questions as to notice of sale not germane to the issue here presented. We are concerned in the instant case with whether the time that elapsed between the first and only publication and the sale was sufficient to afford the grantors in the deed of trust a reasonable notice. We think the notice under the deed of trust, which waived the stautory provisions, is valid

insofar as publication is concerned. But having regard for the fact that practically all the assets of the company were to be sold, we think that the time was entirely too short, that the notice was unreasonable, and that the sale of the trust property, of a value estimated by plaintiff to be in excess of $100,000, to satisfy a demand of $85,300, was inequitable. We are of the opinion that notice should have been published at least ten days in advance of sale.

The deed of trust provided that any two of the trustees could act in the event of foreclosure. Instead of carrying out the terms of the deed of trust, only one trustee acted, and, so far as the record discloses, the other trustees were not present. This was in direct contravention to the rule laid down in *Smith* v. *Lowther,* 35 W. Va. 300, 13 S.E. 999, wherein it was held that "A trustee in a deed of trust executed to him upon a tract of land to secure the payment of money, when required to sell under said trustdeed, must be personally present at the time and place of sale, and supervise the same, and cannot delegate his powers to a stranger, authorizing such stranger to make the sale in his absence, unless authorized so to do by the deed of trust." To the same effect is the case of *Copelan* v. *Sohn,* 75 W. Va. 83, 82 S.E. 1016. In the *Copelan* case it was held that if a trustee was personally present he could lawfully employ an auctioneer to cry the sale. See *Robinson* v. *Robinson, supra.* Defendants urge that Marsh, having concurred in the actions of Rice by executing the necessary documents, was not required to be physically present and that plaintiffs were in no way prejudiced. We are cited cases from other jurisdictions in support of that contention, as well as the case of *Copelan* v. *Sohn, supra.* We are not disposed to follow the holding in cases from other jurisdictions, and think the case of *Copelan* v. *Sohn, supra,* is not authority for that proposition. The subsequent ratification by Marsh of Rice's actions in selling the property is not sufficient to remove the material irregularity of allowing one trustee to sell trust property when the trust deed requires that two act. The absence of two of the three trustees from the sale is another reason for setting aside the sale made by Rice.

We think that the foregoing is sufficient to dispose of this case. "If a bill in equity shows right to any relief a general demurrer thereto must be overruled." *Allen v. South Penn Coal Co.,* 58 W. Va. 197, 52 S.E. 454; *Miller v. Hare,* 43 W. Va. 647, 28 S.E. 722; *Moore v. Harper,* 27 W. Va. 362. But since it may be necessary to resell the trust property, some of the other contentions will be discussed.

No authority has been cited which definitely holds that Beltzhoover should have had notice of the sale. But we think that since Beltzhoover was admittedly appointed trustee in order to protect the rights of Emery and the company as grantors in the trust deed, he should have been accorded an opportunity to be present at the sale. If he refused to act, the provisions of the deed of trust authorizing two to conduct the sale could have been invoked.

The contention of plaintiffs with reference to the duty of the trustee to remove an alleged impediment to the fair sale of the property rests mainly upon the uncertainty of the right to consummate a transfer of the certificates of public necessity and convenience held by the grantor. Some confusion will be found in the statutes with reference to what body may grant this permission. By Section 3, Article VI, Chapter 62, Acts of the Legislature 1935, Regular Session, the state road commission is given authority to grant certificates of convenience and necessity for the transportation of persons and property. Section 5, id., provides that such certificate "may be sold, assigned, leased, transferred as other property, only upon authorization by the commissioner." Common carriers by motor vehicles are made subject to the jurisdiction of the Public Service Commission of West Virginia by Chapter 126, Article 2, Section 5, Acts of the Legislature 1945, Regular Session. By Chapter 127, Acts of the Legislature, id., the jurisdiction of the public service commission is extended to common carriers of passengers or goods by motor. By sub-section (c), Section 5, Article 2, Chapter 126, id., a certificate issued under the act may not be

transferred without the approval of the commission. We are of the opinion that the power and authority to issue such certificates has been transferred to the public service commission. With that in view, we think a court of equity, though having broad powers, could not remove an impediment to the sale of such certificates of necessity and convenience if the public service commission should, for good reasons, refuse to approve a transfer. We are aware of the holding of this Court in *Fine* v. *Zirkle*, 88 W. Va. 265, 106 S.E. 631, but no such situation as existed in the *Fine* case is presented in the instant case.

It is a well known principle, long established in this state, that, as a matter of public policy, a fiduciary cannot profit from the sale of property to which he bears a trust relationship. See *Newcomb, et al.* v. *Brooks, et al.*, 16 W. Va. 32; *Knight* v. *Watts,* 26 W. Va. 175, 202. But those cases presented different questions from that presented here. The trustee did not purchase for himself in the instant case, and, so far as this record shows, he only benefited to the extent of his commission by the sale. True, the trustee must act in a disinterested capacity. *Fleshman* v. *Hoylman,* 27 W. Va. 728; *Hartman* v. *Evans,* 38 W. Va. 669, 18 S.E. 810; *Copelan* v. *Sohn, supra; Robinson* v. *Robinson, supra.* But this record does not disclose that Rice acted otherwise than in a disinterested capacity or that he received any benefit other than his commission on the sale. There is no merit, therefore, in the contentions of the plaintiff with reference to Rice's bidding on behalf of the trust creditor and the purchase by him on behalf of such creditor. We think, however, that it would be a prudent and proper course for the creditor to have an agent other than the trustee to be present to bid on the property in the event of another sale.

The plaintiffs urge that the trust property should have been present at the place and on the day of sale. It is the ordinary rule that personal property subjected to sale under a deed of trust should be physically present at the place and time of sale so as to enable those at-

tending the sale, if they so desire, to inspect the property. *Produce Co.* v. *Craighead,* 116 W. Va. 194, 179 S.E. 69. See Annotation, 69 A.L.R. 1194. The same rule is applicable to property subject to sale under provisions of the Uniform Conditional Sales Act. *Trust Co.* v. *Browning,* 108 W. Va. 585, 152 S.E. 10. But in the instant case the property included a large number of motor vehicles which, at the time and day of sale, were being used in transportation of passengers in one or more states. It would have disrupted the public service, which the company was obligated to furnish, to assemble all of such motor vehicles at the place of sale. Moreover, an exhibition of the certificates of public necessity and convenience at the place of sale would have served no real purpose. We think that the situation in this case calls for an application of an exception to the general rule: "The need for some exceptions and their range must depend upon considerations of policy and fairness that cannot be formulated with precision in advance of the event. At times the thing to be sold may be too bulky to be brought within the view of bidders, as, for example, upon a sale of a ship." *Manhattan Taxi Serv. Corp.* v. *Checker Cab Mfg. Corp.* (N.Y.), 171 N.E. 705, 706. Moreover, it is to be noted that in the instant case the deed of trust provided that the sale may be at public or private sale. Applying the exception above noted, and having regard for the provisions of the deed of trust authorizing a private sale, we are of opinion that the contention of the plaintiffs with reference to having the physical presence of the property at the place of the sale is not well taken.

Since there is no denial of the facts that only one publication was made two days before the sale and only one trustee out of the three appointed by the trust deed was personally present, the sale heretofore made should be set aside by the trial court. When the sale made by Rice on October 31, 1949, is set aside, the materiality of plaintiffs' contentions with reference to the *nunc pro tunc* order disappears and that contention calls for no discussion.

A court of equity has jurisdiction and authority to

supervise sales under a deed of trust. *Kinports* v. *Rawson*, 36 W. Va. 237, 15 S.E. 66; *Hartman* v. *Evans*, 38 W. Va. 669, 18 S.E. 810.

We are of the opinion that the Circuit Court of Berkeley County erred in sustaining the demurrer to the original and amended bills of complaint. Accordingly, we reverse the decree of that court, and remand the cause with directions to proceed with the case upon the pleadings filed, and, in the event sale of the trust property is warranted under the deed of trust executed by Emery and the Company to Rice, Marsh, and Beltzhoover, trustees, to supervise such sale, in accordance with the principles herein discussed.

*Reversed and remanded with directions.*