ALEXANDER F. GREIG

*v.*

FRANCES A. RUSSELL *et al.*

*Filed at Ottawa January 25, 1886.*

1. EQUITABLE TITLE—*of facts as showing whether it exists.* A bill in chancery alleged that in the year 1847 one S. was in the possession of a lot, claiming equitable rights therein; that he lawfully entered upon the lot when wild land, and built large and extensive improvements upon it; that at the same time one R., then of the State of Connecticut, held the legal title to the lot, but acknowledged the equitable rights and interest of S. in the same;

that on or about July 24, 1847, S. purchased from R. the interest of the latter in the lot, and took from R. a contract of purchase at the price of $7000, and made valuable improvements on the same, but being unable to complete the payment, in pursuance of an agreement to that affect, S., in 1852, assigned to R. his contract·of purchase, and made him a quitclaim deed for the lot, clearing up all liens on his interest, and received back a new contract of purchase for $7277.50 on credit, making time of performance of the essence of the contract, and providing for forfeiture of all payments and rights for failure to make prompt payments, and also showed a declaration of forfeiture by the vendor for non-payment: *Held,* that the bill did not show any equitable title in S. at the time of the making of the quitclaim deed.

2. VENDOR AND PURCHASER—*or mortgagor and mortgagee—which relation exists.* Where a purchaser of real estate, being in default of payment, by an arrangement with his vendor made a quitclaim deed of the property, and surrendered his contract of purchase, and another contract of purchase was executed providing for a conveyance on payment of the sum due under the former contract, in installments, it was *held,* that the relation of mortgagee and mortgagor was not thereby created, but that the true relation between the parties was still that of vendor and purchaser, and the latter failing to make his payments, could not, after a forfeiture under his contract, maintain a bill to redeem as a mortgagor.

3. PLEADING—*admission by demurrer.* A demurrer to a pleading admits the truth of the facts well pleaded, but not the conclusions sought to be drawn from them. An averment in a bill that a transaction set out was a mortgage, is but an inference of the pleader from the facts stated, and such inference is not admitted by a demurrer to the bill.

4. SAME—*allegation contrary to written contract.* Where it is disclosed in the bill that a contract of purchase had been assigned to the vendor, and a new contract of purchase voluntarily and knowingly entered into for a purchase on different terms and conditions, and there was no fraud or mistake claimed, this alone will be looked to as showing the intentions of the parties, and treated as the consummation of the agreement between them, and an allegation showing an agreement different from what the written one expresses will not prevail so as to be regarded as admitted by a demurrer to the bill.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Mr. SAMUEL H. WRIGHT, for the appellant.

Mr. JNO. N. JEWETT, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill to redeem from an alleged mortgage upon a lot of land in the city of Chicago. The court below sustained a demurrer to the bill for want of equity, and dismissed the same, and the complainant appealed.

The material facts alleged in the bill are, that in the year 1847 one William H. Stow was in the possession of lot No. 9, block 28, old town of Chicago, claiming equitable rights and interests therein; that he lawfully entered upon the lot when wild land, and built large and extensive improvements upon it; that at the same time one Samuel Russell, then of Middletown, in the State of Connecticut, held the legal title to the lot, but acknowledged the equitable rights and interest of Stow in the same; that on or about July 24, 1847, Stow purchased from Russell the latter's interest in the lot, and took from Russell a contract of purchase, the purchase price being $7000, payable $1000 on the execution of the contract, and the balance in five equal annual payments, with six per cent interest; that the $1000 was paid, and other payments made, the last on August 2, 1852, at which date Stow was owing Russell $4152.50 on the contract of purchase; that meanwhile Stow continued to occupy the lot, pay the taxes and assessments, and made other valuable improvements thereon, the lot, with the improvements and buildings thereon, then being of the value of $40,000 and upwards; that on and shortly before August 2, 1852, Russell required from Stow immediate payment of all sums due him, as well on account of the contract of purchase as otherwise, and Stow being unable to make immediate payment of said sum so owing, it was thereupon mutually agreed between them that Stow should secure Russell the debt, with ten per cent interest, said security to be effected by assigning said contract of purchase to Russell, and obtaining an assignment of all outstanding liens or claims upon said contract or said lot, or Stow's rights and

equities therein, in such manner as would leave the title unaffected thereby in the hands of Russell, and by Stow and his wife executing to Russell a deed of all their interest in the lot, and then Russell should extend the time of payment, this to be effected by a contract in writing, the consideration named therein being $7277.50, which sum was the old indebtedness and ten per cent interest thereon up to the time of the several payments provided for in the new contract; that Stow obtained an assignment of all liens and claims against his equitable interest in the premises, and on July 31, 1852, he and his wife executed a deed to Russell of all their interest in the lot, which deed and assignment Stow delivered to Russell on August 2, 1852, on which day Russell and Stow executed the new contract in writing between them, which is set forth in full, and which purports to be an agreement for the sale by Russell to Stow, and the purchase by Stow of the lot from Russell for the price of $7277.50. Under this new contract, which provided for monthly payments from December 1, 1852, up to December 1, 1855, the bill alleges that Stow had paid, prior to September 15, 1854, the sum of $4200; that on January, 1855, there was tendered by Stow $400, which was refused; that again, on December 1, 1855, Stow tendered $3951.35, and on December 2, 1855, $4426.01, in full satisfaction of his indebtedness; that said tenders were refused upon the ground that the new contract was one for the sale and purchase of the lot, and as such had become void, and the payments made thereon forfeited, which claim, it is insisted, was fraudulent and unfounded, and that said transaction was a mortgage; that the complainant has succeeded to all the rights of Stow, and that the defendants (except the Sheldons, who are made parties as agents only,) have succeeded to the rights of Russell. The bill also sets forth that in 1856 Russell caused suits in ejectment to be brought in the United States Court against various persons, tenants of Stow, in possession of separate portions of the lot,

in which judgments were recovered against the defendants, and under process issued thereupon Russell was put in possession of such portions of the lot by the marshal, and that he and his representatives have ever since been in possession, collecting rents, etc. The prayer is for a redemption from the alleged mortgage, an account of the rents received, etc. The conveyance to the complainant is stated as bearing date July 30, 1883. The bill was filed October 22, 1883.

It is insisted by appellees' counsel, that the quitclaim deed of Stow's equitable interest in the lot, made by Stow and wife to Russell, stamps the contract of August 2, 1855, as a mortgage. The bill does not show that Stow ever had any equitable interest in the lot. As respecting any interest before the making of the contract of purchase from Russell, in 1847, the bill alleges that prior to that time Stow was in possession of the lot, claiming equitable rights and interests therein; that he lawfully entered upon the lot when wild land, and built thereon large and extensive improvements. All this fails of showing any equitable right. What was a lawful entry is a mere conclusion—it might have been deemed such from the entry having been on wild land. No facts are alleged to negative the idea that in 1847 the improvements did not belong to the owner of the lot, as a part thereof. The bill admits that Russell held the legal title to the lot, and that on July 27, 1847, Stow made a contract in writing with Russell for the purchase of the lot from him. Under that contract of purchase the bill does not show any equitable right in Stow, for although he had paid considerable sums of money under the contract, and had made improvements, he had failed in performance of the contract on his part, the time for making payment having expired, leaving a large amount of the purchase price unpaid, and without any excuse therefor. Whatever may be vaguely said in the bill about indefinite equities, it can not be seen, from any facts stated in the bill, that Stow had in reality any equitable interest in

the land at the time of his quitclaim deed to Russell, or that it conveyed any. It does not appear that Russell required or looked upon that deed as any additional security, further than might appear from the fact of giving the deed. The taking of the deed, together with the assignment of the old contract, may well have been for the purpose of disembarrassing the title, of that contract.

The contract in writing of August 2, 1852, most distinctly expresses what the arrangement was which at that time was made between the parties—what was their object and intention; and it contains no hint of a mortgage, or of any security for money. It is a plain contract for the sale and purchase of the lot, whereby Russell agrees to sell to Stow, and Stow agrees to purchase from Russell, the lot for the sum of $7000, with stringent provisions making time of the essence of the contract, and forfeiture for non-payment. There is no indication, from facts stated, that the contract was adopted as a cloak of any other purpose, or that there was any intention of the parties otherwise than as expressed by that contract. At the beginning, there was a contract for the sale and purchase of the lot. The relation between the parties was that of vendor and vendee, and we think that relation of vendor and vendee has continued throughout, there never having been anything but a contract of sale, and no mortgage, or relation of mortgagor and mortgagee. The purchaser failing of performance, the old contract was cancelled and a new contract in writing was made between the parties, giving further time for payment of the purchase money, and increasing the rate of interest from six to ten per cent. We think the parties were content with, and understandingly entered into, that contract as it purports, as the measure of their rights, and that they should be held to abide thereby.

A demurrer to a pleading admits the truth of the facts well pleaded, but does not admit the conclusions sought to be drawn from them. The averment of the bill that the transac-

tion was a mortgage, is but an inference of the pleader from the facts stated, and the correctness of that inference is not admitted by the demurrer.

But it is urged there is an averment in the bill that it was mutually agreed between the parties that Stow should secure said Russell the said debt, said security to be effected by assigning the old contract to Russell, obtaining an assignment of all outstanding liens or claims upon said contract or land, and by executing the quitclaim deed,—that this is an averment of fact, which is admitted by the demurrer, and which shows there was a mortgage. The written contract was the consummation of the agreement between the parties, and expressive of what it was. There is no pretence of any fraud or mistake in the written contract in not expressing what was the real and final agreement. We can attach no more importance to this alleged agreement as to securing the debt, than that the security for the payment of the purchase price of the lot was to be by entering into the written contract of August 2, 1852, with its stringent provisions for payment, Stow having on his part executed the writings which he was to execute, and that such allegation of agreement should not, under the facts set forth in the bill, prevent such written contract from being taken as showing the rights of the parties. See *Sutphen* v. *Cushman,* 35 Ill. 186.

Finding no error in sustaining the demurrer, the order of dismissal must be affirmed.

*Order affirmed.*

The record in this case was assigned to Judge DICKEY, and he not having prepared an opinion in his lifetime, the record was re-assigned at the November term, 1885.