## Elsie V. Caldwell, Executrix, Appellant, v. Frank C. McGee, Appellee.

1. CONVEYANCES—*presumption of error in description.* Where a party conveys land which he does not own but does own land in the same section, the presumption is that he intended to convey the land he did own.

2. MORTGAGES—*when deed not construed as constructive.* Held, that the evidence in this case was not sufficient to establish that a deed absolute on its face was designed as a mortgage.

Bill in chancery. Appeal from the Circuit Court of Hancock county; the Hon. ROBERT J. GRIER, Judge, presiding. Heard in this court at the May term, 1910. Affirmed. Opinion filed May 26, 1911.

FLACK & LAWYER and SCOFIELD & CALIFF, for appellant.

O'HARRA, O'HARRA & WOOD, for appellee.

MR. JUSTICE PHILBRICK delivered the opinion of the court.

Appellant's intestate, Thomas J. Caldwell, during his lifetime had numerous business transactions with Frank C. McGee, appellee. On March 29, 1905, Frank C. McGee made and executed to Thomas J. Caldwell his certain warranty deed by which he conveyed to said Caldwell the north half of the southeast quarter of section 12, township 12 north, range 8 west of the 4th P. M., Hancock county. The deed was duly acknowledged and delivered, and the consideration expressed therein was $6,000.

On May 23, 1905, the following agreement was executed by Frank C. McGee:

"Articles of agreement made and entered into this 23rd day of May A. D. 1905, between Thomas J. Caldwell and Elsie Caldwell, his wife, of the first part, and Frank C. McGee of Elveston of the second part witnesseth:

That the said party of the first part for and in consideration of the sum of one dollar in hand paid, the receipt of which is hereby acknowledged, does hereby give to the said party of the second part an option to purchase the following described real estate to wit: The north one-half of the south-

east quarter of section number (12) in township (4) north, range (8) west of the fourth principal meridian containing (85) acres in Hancock county, Illinois, for the sum of six thousand dollars ($6,000.00), which said option is absolutely irrevocable. The said party of the first part further agrees that if the said option is accepted by the said party of the second part and the money paid as above provided, he will convey by proper deed, or deeds of conveyance, the said above described premises to the said party of the second part free from all encumbrances.

The covenants and agreements herein shall be binding upon the said party of the first part, his heirs, executors, grantors or assigns.

The party of the second part is hereby given possession of said described premises. The said party of the second part agrees to pay as rent therefor the sum of three hundred dollars ($300.00) per annum and the taxes, payable on the 23rd day of May in each year during the continuance of this option.

In case party of the second part shall fail to pay said rent as provided the said failure to pay shall work as a forfeiture of the said option above given to the party of the second party, and no other condition or cause shall work as a forfeiture thereof.

It is further agreed by the party of the second part that if this option should prove to be taxable he will either pay it off or pay the additional tax.

It is further agreed that said option shall extend to May 23rd, A. D. 1920, and upon the full payment of the said sum above provided for the said deed shall be executed.

                          Frank C. McGee.    Seal."

These papers were found by appellant among the papers of Thomas J. Caldwell after his death. The bill prays that the deed executed by McGee to Caldwell on March 29, 1905, shall be declared to be a mortgage, executed to secure Caldwell the payment of $6,000, which it is alleged was then due and owing to him from Frank C. McGee, and that the agreement signed by McGee of date May 23 was executed for the purpose of permitting him to redeem this land from the deed of March 29. The bill also alleges that the $300

provided to be paid as rent was, in fact, the interest on the $6,000 expressed as the consideration in deed and alleges failure to pay rent as per said option and a forfeiture by reason thereof.

Frank C. McGee never owned the north half of the southeast quarter of said section 12, but did prior to and on March 29, 1905, own the north half of the northeast quarter of said section 12. The bill alleges that a mutual mistake in the description of the land in the deed and article of agreement or option was made, and prays that both be córrected and reformed so as to describe the north half of the northeast quarter of said section 12, being the land which McGee then owned, and prays that the deed with the description so corrected may then be foreclosed as a mortgage.

The answer filed by appellee denies all of the allegations of the bill which are material to a recovery.

Among the papers of appellant's decedent were also the following letters:

"March 2-3, 1904.

T. J. Caldwell, Macomb, Ills.

Dear Uncle:—Your letter of some former date received and contents noted. Would of answered sooner but Clara and Mildred have been sick for the last two weeks. They are better now; the doctor was here every day for quite awhile. I was up every night. I got purty well wore out.————

Uncle you asked if I had mortgaged any of my land. No I havn't and dont expect to, I can get all the money I want to run my business without it.

Uncle, if you want to loan One Hundred Dollars an acre on my 85 acres for ten years at four per cent and let me pay you what you have on the other land we might make a deal. Well Uncle any time you think I am dishonest and you want to record your deed let me know and I will try and pay you.

Hopeing this find you and Aunt well I will quit for this time As ever

Your Nephew,
Frank C. McGee."

"Elveston, Nov. 28, 1904.

T. J. Caldwell, Macomb, Ills.

Dear Uncle & Aunt: Your letter of some former date received and was glad to hear you was all well—every body is as well as common so far as I know. I have been having lots to do since I was at your house and havent been away from home mutch.

Well Uncle you said you had some money you wanted to loan. I can use fifteen hundred or two thousand Dollars. You spoke of letting me have some more on the land you have of mine when I was there. What ever amount you care to send me I can use any time you want to send it. I think I could sell all of my land for a hundred dollars an acre any time I would say I would take it. I have got a good farm and I guess I will just keep it as long as I live.

Uncle I have been thinking of burning coal this winter; what will you take for your base burner or do you want to sell it? Is it in good shape?

Hopeing this will find you all well,

         I remain
         Your nephew,
          F. C. McGee."

These documents, together with certain conversations had by Frank C. McGee with appellant herein and one or two other witnesses, constitute the evidence in this cause. Appellee offered no evidence. The chancellor denied the relief prayed, found the issues for the defendant and dismissed the bill for want of equity.

Upon the question of there being a mutual mistake in the description of the land contained in the deed and the article of agreement, called the option, the evidence is so clear and convincing that there can be no question that the description in the deed is erroneous, and that the error was made by mutual mistake of both parties. The fact that Frank C. McGee never did own the land described in the deed and article of agreement, together with the fact that in his letters written to Caldwell in his lifetime he refers to his land in the following language in one letter: "You spoke of letting me have more on the land you have of mine when I was there," and in the other letter uses this language: "Well,

Uncle, any time you think I am dishonest and you want to record your deed let me know and I will try and pay you," can only mean, and the only conclusion that can properly be arrived at from the use of this language, is that Caldwell held a deed to certain lands conveyed to him by McGee. Where a party conveys land which he does not own but does own other land in the same section the presumption is that he intended to convey the land he did own. In Dougherty v. Purdy, 18 Ill. 206, the court holds that where grantor was shown to own the undivided half of the lot described, which is west of the 4th P. M., the law presumes that he intended to convey it rather than the lot lying east of the 4th P. M. to which it did not appear that he had any title.

The contention that appellee was indebted to Caldwell and that the deed was made to secure such indebtedness and that the agreement should be construed with the deed and be held to be a condition of defeasance in the deed, presents a more difficult question to determine. Upon this contention the burden is upon appellant to establish these facts by proper proof and we are unable to find in this record any evidence showing any specific indebtedness from McGee to Caldwell other than might be conjectured from the fact of the execution of the deed, the article of agreement and the two letters written by McGee. The conversations had between appellant and McGee are not sufficient to prove the existence of an indebtedness from McGee to Caldwell or a promise to pay any specific indebtedness. Heaton v. Gaines, 198 Ill. 479; Greig v. Russell et al., 115 Ill. 483.

Upon the question, however, of having the deed declared to be a mortgage and the article of agreement held a condition of defeasance to be attached to the deed and a part thereof and that appellee was indebted to appellant, and that the deed was made to secure this indebtedness, and that appellant should be permitted to foreclose the deed as a mortgage, from a careful examination of the evidence we are satisfied that the evidence fails to disclose that the deed and article of agreement should be treated as contemporaneous acts and construed together; neither is there sufficient evi-

dence to show that the deed was intended as a mortgage or that it was given to secure any sum of money to Caldwell, or to show that McGee was indebted to Caldwell and if it be conceded there was proof of some indebtedness there is no proof of any specific amount that would justify a court in directing the repayment of any particular sum to appellant by appellee.

The fact of the execution of the deed and of the contract to resell by McGee with the circumstance that they were found together after the death of Caldwell is not sufficient to establish the papers a mortgage. Caraway v. Sly, 222 Ill. 203.

The bill is filed upon the theory that the deed was given to secure $6,000. The prayer for relief is that the deed although absolute on its face be declared to be a mortgage; that as a mortgage, it be reformed so as to describe the N. $\frac{1}{2}$ N. E. $\frac{1}{4}$ section 12, and that it may then be foreclosed for failure on the part of defendant to comply with the provisions of the contract of May 23, 1905.

The bill having been filed and the cause tried below solely on the theory that defendant was indebted to Caldwell and these papers were the evidence of such indebtedness and the proof having failed to so show these facts, the chancellor properly held that the deed could not be held to be a mortgage, and the decree is affirmed.

*Affirmed.*