O. A. Christensen, Complainant and Defendant in Error, v. Walter W. Niedert et al., Defendants. Theodore F. Decker, Plaintiff in Error.

Gen. No. 34,209.

Heard in the second division of this court for the first district at the April term, 1930. Opinion filed October 14, 1930.

Joseph G. Sheldon, for plaintiff in error.

McFarland, Morgan, Partridge & McFarland, for defendant in error; James H. McFarland and Frank H. Partridge, of counsel.

Mr. Justice Gridley delivered the opinion of the court.

By this writ of error, Theodore F. Decker seeks to reverse a deficiency decree, entered in a foreclosure proceeding on August 26, 1929, wherein it was adjudged that "complainant, O. A. Christensen, have and recover from the defendants, Walter W. Niedert, Elsie Niedert and *Theodore F. Decker,* the sum of $12,936.77, with interest thereon from August 21, 1929 (the date of foreclosure sale), and that said complainant have execution therefor against said defendants as upon a judgment at law."

On September 10, 1926, the two Niederts (husband and wife), being the owners of improved premises in Chicago subject to a first trust deed of $19,000, executed their 16 promissory notes, numbered 1 to 16 inclusive, payable to bearer. Each also indorsed them. Notes 1 to 15 were each for $250, and note 16 was for $12,500. As security for the notes they on the same day executed and delivered a second trust deed on the premises to the Chicago Title & Trust Co., trustee, which was duly recorded. Note No. 1 became due on

December 10, 1926, and notes 2 to 16 at three months'
periods thereafter, No. 16, for $12,500, maturing on
September 10, 1930. All notes bore interest at the rate
of 6 per cent before maturity and 7 per cent after ma-
turity. The trust deed contained the usual covenants,
among which were that, in case of default for three
days in making payment on any note when due, either
of principal or interest, then the whole of the prin-
cipal sum secured should, at the option of the holder
of the notes, become immediately due and payable,
without notice, and he should have the right to im-
mediately foreclose the trust deed, and that in case
of foreclosure reasonable sums should be allowed for
solicitor's fees, stenographer's fees, necessary costs,
etc. After the Niederts had executed the notes and
trust deed they conveyed the premises to one Kate W.
Clarke, and she became the owner thereof subject to
said two trust deeds. Theodore F. Decker had formerly
owned the premises. He was a relative of the Niederts,
and Walter W. Niedert was an employee of his in his
business. In June, 1927, one Albert Reinhardt nego-
tiated with Walter W. Niedert for the purchase of
such of the notes as had not matured. At Reinhardt's
request Niedert went to Decker and procured the lat-
ter's indorsement on all of the unmatured notes. The
indorsement, as ''T. F. Decker,'' is immediately below
the indorsements of the Niederts. Thereupon Rein-
hardt purchased the notes from Niedert. Thereafter
Reinhardt sold the notes to one Walter G. Larson, and
thereafter Larson sold them to complainant. In Feb-
ruary, 1927, notes Nos. 1 to 7, inclusive, had been paid
and canceled, and all interest due on the entire in-
debtedness had been paid up to June 10, 1928, but notes
Nos. 8 and 9, maturing respectively on September 10
and December 10, 1928, had not been paid, nor had any
quarterly interest been paid since June 10, 1928. By
reason of this default and the further default in the

payment of the general taxes levied against the premises for the year 1927, complainant, as holder of all unpaid notes, elected to and did declare the entire indebtedness due, and on February 27, 1929, filed the present bill. He made the Niederts, Decker, Kate W. Clarke, certain tenants in possession, and others, parties defendant. All of them, including Decker, were personally served with process, and all were defaulted except Kate W. Clarke, who filed an answer, and the cause was referred to a master to take proofs and report his conclusions of law and fact. On the hearing before the master only testimony offered by complainant was introduced.

Among the allegations in the bill are that "Decker, for the purpose of negotiating and selling said trust deed and the notes secured thereby, and solely for his own accommodation, under the name and style of T. F. Decker, *indorsed* each of the notes owned and possessed by your orator"; that "Decker, at the time of indorsing said notes, *guaranteed* payment of them, as they should become due, subject to all the terms and provisions of the trust deed owned by your orator; and that, although default has been made in the payment of the notes, said Decker has not paid them, or either of them, or any part thereof." There are no allegations in the bill to the effect that, when said notes (due respectively on September 10, and December 10, 1928) were not paid, Decker, as the indorser thereof was given due notice of their dishonor. The prayer of the bill, in addition to praying for an accounting, etc., is:

"That a decree for said sums may be entered against the defendants, Walter W. Niedert and Elsie Niedert; that upon the failure of said defendants to pay said decree within a short day to be fixed by the court, the premises may be sold, etc.; that in the event that said premises do not sell for a sufficient sum to pay the

amount of the indebtedness due, your orator may recover a deficiency decree against the *makers* (i. e., the Niederts) of said notes; . . . that a *judgment* may be entered herein against the defendant, Theodore F. Decker, for the amount due secured by your orator's trust deed, together with interest thereon; that execution may be issued upon said judgment against his property; and that your orator may have such other and further relief in the premises as equity may require." etc.

On the hearing before the master no testimony was introduced tending to show that the liability of Decker was other than that of an indorser on the notes, or showing that any demand had been made on the Niederts, or that due and timely notice of the dishonor of the notes had been given to Decker to charge him as an indorser, as required by the provisions contained in Article VII of our Negotiable Instruments Law (Cahill's St. 1929, ch. 98, ¶ 110 *et seq.,* pp. 1809–10.) The only testimony as to notice to him is that on January 10, 1929, after default in the payment of the said notes due on September 10 and December 10, 1928, had been made, said Walter G. Larson called Decker on the telephone and told him he would be held responsible for their nonpayment, and that, prior thereto, on January 3, 1929, he (Larson) had written Decker a letter, advising him of said nonpayment, and stating that "if payments are not met at once we will have to call on the indorsers as well as the makers on this mortgage, as we have only been getting extended excuses from Mrs. Kate W. Clarke." All unpaid notes were introduced in evidence before the master. There is nothing on the notes to indicate that Decker is a guarantor thereof, nor on them are there any provisions providing for the acceleration of the due dates under any conditions. Reinhardt testified in substance

that in June, 1927, when Niedert asked him to purchase the notes, he told him that he (Reinhardt) "would take that mortgage if it was signed by Decker," as he then "would feel safer about the mortgage"; that "it was my understanding and intention, at the time I bought the notes, that in case they were not paid I would collect the money from Decker"; that "if Decker's name had not appeared on the notes I would not have taken them"; and that, thereafter, when the witness sold the notes to Larson, "I told him (Larson) about the conversation that I had at the time Decker *indorsed* the notes." Larson testified in substance that he was in the mortgage loan business; that he bought the notes from Reinhardt about March 10, 1928, and sold them to Christensen (complainant) on March 15, 1928; that when he purchased them from Reinhardt, the latter told him how and for what purpose he "had gotten the *indorsement* of Decker"; and that "it was on the strength of Decker's signature on the back of the notes" that he (Larson) had purchased them. The complainant, Christensen, president of a bank, testified in substance that he purchased the notes from Larson for cash "at a discount"; that after he purchased them only one note was paid—the one maturing on July 10, 1928, for $250; that at that time he knew of the financial responsibility of Decker; and that "it was entirely on account of Decker's *indorsement* on the notes that induced me to purchase them."

The master, in his report properly found that at the date of his report (June 27, 1929) there was due on the indebtedness, evidenced by said unpaid notes, the total sum of $16,160.07, including interest, solicitors' fees of $1,000, and other costs and charges. He recommended that a decree of foreclosure be entered in accordance with the prayer of the bill. On the same day the report was filed (July 24, 1929) the court entered a decree of foreclosure, confirming the master's report,

and adjudging that complainant, by virtue of said second trust deed, had a valid and subsisting lien, subject to said first trust deed of $19,000, on the premises for said total sum of $16,160.07. In addition to the usual findings the court found that Decker had previously owned the premises and had previously owned and held said trust deed; that "Decker, for the purpose of negotiating and selling the trust deed and the notes secured thereby, and solely for his own accommodation, under the name and style of T. F. Decker, indorsed each of said notes owned and held by complainant"; that "notice of the default in the payment of the note due December 10, 1928, was given to said Decker (court does not state when such notice was given) and that said Decker has not paid the notes, or any or either of them, or any part thereof"; that on September 10, 1926, the legal title to the premises was held by the two Niederts, but that the beneficial title thereto was in Decker; that on said date the two Niederts executed said second trust deed and "as an accommodation for Decker and for the sole purpose of aiding said Decker in negotiating a sale of the trust deed and notes"; and that "The defendant, Theodore F. Decker, at the time he indorsed said notes, *guaranteed* the payment of the same as they severally should become due, subject, however, to the terms and conditions of the trust deed securing said notes; and that said Decker by said indorsement guaranteed the payment of interest, costs and solicitor's fees, in addition to the principal amount of said notes and each of them."

We do not think that the last mentioned finding of the court is sustained by the evidence or the law. The evidence discloses that Decker's signature on the notes is that of an indorser as distinguished from that of a guarantor. And, as he did not sign the trust deed, he could not in any event be held for solicitor's fees, etc.

In the foreclosure decree the court, in addition to ordering a sale of the premises in the usual manner, further ordered that, if the proceeds of the sale of the premises be insufficient to pay the amount found to be due, ''then the persons, firms or corporations to which such amounts shall be due and which shall not be satisfied as aforesaid, shall be entitled to a deficiency decree against the defendants personally liable therefor for the amount of such deficiency.''

The premises were sold after due advertisement on August 21, 1929. In the master's report of sale, filed August 26, he states that he sold the premises for $4,000 to the complainant, Christensen, and that after payment of master's fees and costs there was a deficiency of $12,936.77. On the same day (August 26) the court entered the deficiency decree, as first above mentioned, in which there was a finding that, as it appeared that personal service of summons in the cause had been had upon the two Niederts and Decker, they *and each of them* were personally liable for such deficiency.

We think it clear from the evidence, and under the provisions contained in section 16 of the Mortgages Act (Cahill's St. 1929, ch. 95, ¶ 17, p. 1773), that such deficiency decree was proper as to the two Niederts, but we do not think that under the evidence and the law it can be sustained as to the defendant, Decker. A similar case is that of *Walsh v. Van Horn,* 22 Ill. App. 170. From the opinion it appears that in 1882 Van Horn filed a bill to foreclose a mortgage making William Galligher, Bridget, his wife, and Walsh parties defendant; that he also asked for a personal decree against Galligher and Walsh and that for any balance unpaid after the sale of the premises he have execution against both; that in Walsh's answer he denied the right of Van Horn to have a personal decree against him for any such balance; that in March, 1875, Gal-

ligher had executed his promissory note for $560, due in five years and payable to Walsh; that Galligher and wife, to secure its payment, had given a mortgage upon the premises; that in April, 1875, Walsh had sold and assigned the note and mortgage to Van Horn; and that it was a matter of dispute between the parties whether in the transaction Walsh had assumed the liability of a guarantor, or only that of an indorser. On the hearing of the cause a decree of foreclosure was entered. Upon the coming in of the master's report of sale, the court found that there was a deficiency of $589.06, and entered a personal decree therefor against both Galligher *and Walsh,* and awarded execution against them. From the deficiency decree Walsh alone appealed. In reversing that decree as to Walsh, the court said (p. 172, italics ours):

"It is only by virtue of an express provision of statute, or where there are facts giving equitable jurisdiction over the demand, that a third person liable for the mortgage debt can be joined as a party defendant in a foreclosure suit, and a judgment be recovered against him for a deficiency. In the absence of such statute and of circumstances giving jurisdiction to the court of chancery, there is a misjoinder of causes of action. (Citing 2 Jones on Mortgages, sections 1710 and 1711.)

"In this case there are no circumstances of equitable jurisdiction. Whether the responsibility of appellant (Walsh) for the payment of the note was that of an indorser or that of a guarantor, *it was a purely legal liability and enforcible in a court of law.* It does not change the case even if his contract was an original undertaking and one upon which he could be sued in the first instance and without reference to the maker. It would simply be a promise distinct from those embodied either in the note as originally given or in the

mortgage, but one containing no element that would make it cognizable in the chancery court. . . .

"The only statutory provision that is claimed to justify the decree against appellant is Sec. 16 of Chap. 95 of the Revised Statutes. That section, as we understand it, does not in terms or by implication give the right to join in the foreclosure suit third persons who are legally liable for the payment of the mortgage debt, *for the purpose of obtaining* a decree against them for the *residue* of the debt remaining unpaid after all the mortgaged property has been exhausted."

The Appellate Court of the Second District then proceeds to analyze said section of the statute and gives reasons for its opinion as to its proper construction.

We agree with the reasoning and conclusion in the opinion in the *Walsh* case and think it decisive of the present cause. Counsel for complainant here contend, as we understand them, that because Decker was personally served with process and the foreclosure decree was taken *pro confesso* as to him, the *Walsh* case is not here applicable. We cannot agree with the contention. Furthermore, there are not sufficient allegations in complainant's bill warranting the entry of any deficiency decree against Decker. It is well settled that "a decree *pro confesso* concludes the defendant only as to matters alleged in the bill." (*Curley v. Ford,* 168 Ill. App. 525, 528; *Curlett v. Curlett,* 106 Ill. App. 81, 85; *Armstrong v. Douglas Park Building Ass'n,* 176 Ill. 298, 300.) Furthermore, the evidence in the present cause discloses that Decker was an indorser of the notes as distinguished from a guarantor. In section 63 of our Negotiable Instruments Law, Cahill's St. ch. 98, ¶ 83, it is provided that "a person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicated by appropriate words his

intention to be bound in some other capacity.'' There is nothing upon the notes in question indicating that Decker intended to be bound in any other capacity than that of indorser. And the notes, introduced in evidence by complainant, ''control the allegations of the bill.'' (*Armstrong v. Douglas Park Building Ass'n,* 176 Ill. 298, 300; *Greig v. Russell,* 115 Ill. 483, 489; *Price v. Solberg,* 269 Ill. 459, 462.) Furthermore, the evidence discloses that no sufficient notice was given to Decker of the nonpayment of such of the notes as had matured when complainant's bill was filed. Furthermore, several of the notes, upon which Decker's name appears as an indorser, including the note, No. 16, for $12,500, had not matured, as to him as the indorser, when the deficiency decree was entered, and which said notes were included in the amount of said decree.

For the reasons indicated the deficiency decree of August 26, 1929, is reversed as to Theodore F. Decker, and the cause is remanded to the superior court with directions to so modify the decree as to eliminate Decker's name entirely therefrom, leaving said decree standing as against Walter W. Niedert and Elsie Niedert only.

*Reversed and remanded with directions.*

SCANLAN, P. J., and BARNES, J., concur.